The People of the State of Illinois, Plaintiff-Appellee, *v.* Robert Wright, Defendant-Appellant.

(No. 12089;

Fourth District—April 25, 1974.

John F. McNichols, Deputy Defender, of Springfield (J. Daniel Stewart, Assistant Appellate Defender, of counsel), for appellant.

C. Joseph Cavanagh, State's Attorney, of Springfield (James W. Jerz and Thomas F. Sullivan, Jr., both of Model District State's Attorneys Office, of counsel), for the People.

Mr. JUSTICE SIMKINS delivered the opinion of the court:

This is an appeal from defendant's conviction by a jury of the offense of armed robbery in violation of section 18—2 of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, sec. 18—2) and from a sentence of 5 to 8 years. The co-defendant in the case, William Smith, was acquitted by the same jury. Defendant raises the following issues: (1) Whether defendant was deprived of a fair hearing on the motion to suppress, (2) Whether the trial court erred in permitting defendant's confession to be used for impeachment purposes, (3) Whether defendant was convicted beyond a reasonable doubt, (4) Whether the mandatory minimum penalty imposed for armed robbery is unconstitutional, (5) Whether defendant's sentence should be reduced under the Unified Code of Corrections.

At approximately 9:30 P.M. on March 18, 1972, the A & P Grocery Store in Springfield, Illinois, was robbed by two individuals wearing nylon stockings over their faces. At that time there were only two people in the store, Jack Carrol, the manager, and Michaeleen McClure, a checker. The shorter of the two men waved a gun and yelled, "This is a holdup" and, "Lay on the floor." That same individual entered the office and removed the cash register drawers from the safe. The robbers left the store with the trays in their hands. The defendant was arrested later in the evening and was immediately thereafter identified as one of the robbers by McClure. On March 19, 1972, Durrell Jackson, defendant's girlfriend, gave the police a written statement implicating defendant in the robbery.

On April 2, 1972, defendant gave a written confession to Officers Kirk and Pettit detailing his participating in the robbery. On July 3, 1972, defendant moved to suppress the confession. At the hearing defendant

stated that the *Miranda* warnings were not given to him and that he talked to Kirk and Pettit because he had obtained a message while in jail to the effect that Jackson was being "unnecessarily harrassed" due to her relationship with him. When asked what the harrassment was, the trial court refused to permit any testimony by defendant in that regard. On cross-examination Wright testified that he was not forced by Kirk or Pettit to sign the statement, and that Kirk was there upon his request. He further stated that he wouldn't say his statement was voluntary because he gave it under strain, but that neither Kirk nor Pettit put any strain on him. Officer Pettit testified that he was present with Kirk at the time defendant gave his confession, that the *Miranda* warnings were given to defendant, and that no pressure was placed on defendant. He further stated that Officer Kirk was on vacation. The court then stated that if the confession is offered at the trial, Officer Kirk would have to be present. The court then denied the motion to suppress and specifically found that the *Miranda* warnings were given to defendant and that defendant's confession was voluntary.

At the trial Carrol testified that he could not identify the robbers unless they would again wear nylon stockings on their heads.

McClure testified that the larger of the two men stood in front of her under good lighting conditions for 5 or 6 seconds with his face 4 inches from hers and grabbed her shoulder, forcing her to the floor. She further stated that the stocking mask didn't conceal his main features and made no difference as far as her identification was concerned. She then identified defendant as being the larger of the two robbers. She stated that her identification of defendant was facilitated by the fact that defendant had previously been an employee of the store.

Durrell Jackson testified that on March 13, 1972, defendant had a conversation with Howard Lowe at her house concerning holding up the A & P. She also stated that Lowe and defendant had conversed on March 17, 1972, about stealing a car for a robbery. She further stated that on March 18, 1972, defendant was at her house and left to find a car. He returned prior to 9:10 P.M. and left shortly thereafter in a gold car after obtaining a nylon stocking and some rubber gloves. She stated that defendant returned again between 10 and 10:30 P.M., and they all left shortly thereafter to go to the home of Bernadine Smith. At the Smith residence she testified that she observed some money lying on a bed and heard defendant laughingly respond to a newcast concerning the robbery by stating, "We got away slick." She stated that defendant left the Smith residence later stating that he might burn the car. He returned shortly thereafter and stated that he had parked the car near Sandy's Restaurant. She then stated that she was told by Officer Kirk that if she did not make

a statement implicating defendant, she would have her children taken from her.

Lowe testified that while at Bernadine Smith's house on the evening of March 18, 1972, he observed defendant with two bags containing square objects which were taken to a car. He also stated that he saw defendant laughingly respond to a newscast concerning the robbery.

Robert Mabie testified that he was sitting on a park bench across the street from the A&P when the robbery occurred and observed a gold car pull up in front of the store and two men getting out of the car and going into the A & P. He stated that one of the men appeared to have a gun.

Defendant took the stand in his own behalf and testified that he had never discussed a robbery with either Smith or Lowe, and that on the evening in question he and Lowe were at Jackson's house watching T.V. At approximately 9:10 P.M., he stated that he went across the alley to attend a party given by a young lady named Naomi. It was there that he met Smith and the two went to several taverns. Defendant later left one of the taverns and walked to Bernadine Smith's house where he was joined 10 minutes later by Smith. The State then sought over defendant's objection to use for impeachment purposes statements given by defendant in his confession that were inconsistent with certain statements given by him on direct, and the court stated that it could be so used because the voluntariness of the confession had already been established at the pre-trial hearing.

William Smith, the co-defendant, also testified in his own behalf, and his testimony was substantially similar to that given by defendant.

Officer Kirk was called as a witness on behalf of Smith, and he testified that he participated in arresting Smith and Wright. He further stated that Jackson was later taken into custody and gave a written statement concerning the robbery. The defense counsel then chose not to examine Kirk on behalf of defendant Wright.

It is contended that defendant was deprived of a fair hearing on the motion to suppress the confession because the trial court limited the scope of inquiry into the voluntariness of the statement and failed to require all witnesses to the confession to testify at the hearing. We note that defendant on the motion to suppress was not allowed to relate to the court the details of "the unnecessary harrassment" of Jackson, his girl friend. However, during the trial Jackson related to the court the details of the alleged harrassment, *i.e.*, that Officer Kirk had threatened to take her children away from her. Defendant could have at this point renewed his motion to suppress by making an offer of proof of additional evidence or of the existence of special circumstances relating to the issue of voluntariness. The court clearly had jurisdiction to reconsider the

motion to suppress at this time. See *People v. Holland* and *People v. Shackleford* (consolidated), 56 Ill.2d 318. Nevertheless, defendant chose not to renew his motion. Likewise, the court refused to allow the confession to be used during the trial, presumably in the State's case-in-chief, unless Kirk was present at the trial, citing section 114—11(d) of the Code of Criminal Procedure (Ill. Rev. Stat. 1971, ch. 38, sec. 114—11(d)). Kirk, however, was called as a witness by Smith and was available at the trial, but defense counsel chose not to question Kirk on behalf of the defendant concerning the alleged threats. Had defendant chosen to call Kirk before defendant as a defense witness, defendant could likewise have renewed his motion to suppress by making an offer of proof of additional evidence or of the existence of special circumstances relating to the issue of voluntariness. Since defendant did not take advantage of the procedural tools available to him at trial, he cannot now complaint before this court that he was deprived of a fair hearing on the motion to suppress.

■■ The real issue then is whether the trial court erred in permitting defendant's confession to be used for impeachment purposes. The Illinois Supreme Court has held that an out of court inconsistent statement may be used for impeachment purposes only if the voluntary character of the statement is established. *People v. Tate,* 30 Ill.2d 400, 197 N.E.2d 26; *People v. Adams,* 1 Ill.2d 446, 115 N.E.2d 774. In *Harris v. New York,* 401 U.S. 222, defendant admitted to the police that he had sold heroin on a certain date. The trial court held that the statements given by defendant should be suppressed under *Miranda v. Arizona,* 384 U.S. 436, because defendant was not told that he had a right to appointed counsel after being taken into custody, and held that such statements could not be used in the government's case-in-chief. Defendant did not claim that the statements were either coerced or involuntary. At the trial defendant took the stand in his own behalf and denied making the sale in question at which time the government used his prior inconsistent statement for impeachment purposes. The United States Supreme Court affirmed and held that prior inconsistent statements inadmissible because of a failure to comply with the procedural safeguards enunciated in *Miranda* may be used at trial for impeachment purposes provided that its trustworthiness satisfies legal standards.

■■ We believe that the statements given by defendant to the police in the instant case clearly satisfied the legal standards contemplated by *Harris.* The trial court heard defendant and Officer Pettit testify at the hearing on the motion to suppress. Jackson later testified as to the exact nature of the alleged harrassment by the police, and Officer Kirk was available at trial for any further testimony in that regard. Furthermore,

the trial court specifically found that all the *Miranda* warnings were given defendant and that the confession was voluntary. The trial court, however, refused to let the confession be used in the State's case-in-chief because Officer Kirk, a witness to the confession, did not testify at the hearing on the motion to suppress. Nevertheless, such a failure to follow procedural statutorily mandated safeguards as to the voluntariness of confessions is certainly no greater a deviation from legal standards than that which occurred in *Harris*, and the statements were voluntary, at least within the meaning of *Tate*, *Adams* and *Harris*. Therefore, the court did not err in allowing the statements to be used for impeachment purposes.

██ Defendant also contends that he was not proven guilty beyond a reasonable doubt. We find no merit to that argument. McClure, the store clerk, positively identified defendant immediately after the robbery as being the taller of the two robbers. She was face to face with defendant for 5 seconds under good lighting conditions and expressly stated that the nylon stocking did not obscure defendant's facial features. Her familiarity with defendant was also based in part upon defendant's previous employment at the store. Furthermore, Jackson testified that defendant had discussed the robbery several times before March 18, that defendant had obtained a nylon stocking from her, that defendant had responded to a newscast of the robbery with "We got away slick," that defendant stated that he was going to burn the car, and that she had observed money lying on a bed in the house where defendant was shortly after the robbery. Defendant testified in his own behalf as to his whereabouts on the evening in question, but, except for the co-defendant, no other witnesses substantiated defendant's testimony. Nevertheless, credibility is a question for the trier of fact and their determination of guilt will only be disturbed where the evidence is so unsatisfactory as to leave a reasonable doubt of defendant's guilt. (*People v. Hampton*, 44 Ill.2d 41, 253 N.E.2d 385.) This is clearly not the case here.

██ Defendant also contends that the mandatory 5-year minimum sentence with no probation for armed robbery contained in sections 18—2(b) and 117—1 of chapter 38 (Ill. Rev. Stat. 1971, ch. 38, secs. 18—2 (b) and 117—1) is unconstitutional as applied to the youthful defendant here with no prior criminal record because it is violative of the limitation-of-penalties-after-conviction section of the 1970 Illinois Constitution (art. 1, sec. 11) which states that "All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship * * *." We find no merit to this argument. We first note that the minimum sentence imposed is a legislative judgment reflecting the seriousness of this particular offense

and the fact that a longer rehabilitative period is necessary. We also note that the test for the constitutionality of a penalty for a criminal offense is whether the punishment is cruel or degrading or "'so wholly disproportioned to the offense committed as to shock the moral sense of the community.'" (*People v. Jackson*, 116 Ill.App.2d 304, 322, 253 N.E.2d 527.) Considering the seriousness of the crime of armed robbery and the dangers inherent when that offense is committed, we certainly cannot say that the moral sense of the community is offended in any fashion by a 5-year minimum sentence.

■■■ Nevertheless, the State concedes that defendant's minimum sentence should be reduced to 4 years. Defendant was sentenced on July 26, 1972, and on January 1, 1973, the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, secs. 1001—1—1 *et seq.*) became effective. The new Code applies to convictions entered before the effective date but on direct appeal after that date. (*People v. Chupich*, 53 Ill.2d 572, 295 N.E.2d 1.) In those instances the new Code applies for purposes of sentencing "if they are less than under the prior law upon which the prosecution was commenced." (Ill. Rev. Stat. 1973, ch. 38, sec. 1008—2—4.) Defendant was convicted and sentenced to 5 to 8 years under section 18—2 of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, sec. 18—2) which provides for a mandatory 5-year minimum sentence. Under the new Code, however, armed robbery is a Class 1 felony which provides for a 4-year minimum "unless the court, having regard to the nature and circumstances of the offense and the history and character of the defendant, sets a higher minimum term." (Ill. Rev. Stat. 1973, ch. 38, sec. 1005—8—1(c)(2).) Therefore, since the penalty provisions of the new Code are applicable, the minimum imposed by the trial court should be reduced from 5 years to 4 years.

For the reasons herein stated the judgment of the trial court is affirmed as modified.

*Judgment affirmed and modified.*

TRAPP, P. J., and CRAVEN, J., concur.