THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES R. KOEPPEN, Defendant-Appellant.

(No. 73-159; ▌

Second District—August 19, 1974.

Ralph Ruebner, of State Appellate Defender's Office, of Elgin, for appellant.

William J. Cowlin, State's Attorney, of Woodstock (Louis Bianchi, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE SCOTT delivered the opinion of the court:

The defendant was indicted in McHenry County for murder and in a bench trial was found guilty as charged. He received a sentence of not less than 14 years nor more than 14 years and 1 day. From this conviction and this sentence he brings this appeal.

Only two issues are presented for review. They are (1) whether the

evidence was sufficient to sustain the defendant's conviction for murder; and (2) whether the minimum sentence provision which is required to be imposed following a conviction for murder violates the purposes of article I, section 11, of the Illinois Constitution.

A concise statement of the material facts as far as they affect the first issue raised on this appeal show that the defendant on the day of the occurrence moved from a motel to the home of his friend, Herbert D. Beasley. During the afternoon they together worked on the construction of a dog run, consuming a number of cans of beer, followed by dinner and more drinks later. However, there is no contention by anyone including the defendant that intoxication is any factor of consideration in the offense. Later in the evening the defendant Koeppen and his friend Beasley decided to attend the Founders Day Carnival in Algonquin where they remained until the carnival closed at about midnight and then started to go to their parked car. The deceased, Eriberto Arroyo, and his girl friend, Robin Suchy, also attended the carnival and were leaving by the same route when the carnival closed. The defendant was 26 years old, the deceased was 18 years old and 5 feet 6 inches tall and Robin Suchy was 15 years old. Up until this time the defendant and the deceased were strangers. The first encounter between the two parties occurred when the deceased, shortly after leaving the carnival grounds, left his girl friend temporarily on the street to go into the bushes to relieve himself and while the deceased was thus absent the defendant and Beasley approached the girl and the defendant had some words with her as to what the deceased was doing. She rebuffed their encounter but related it to the deceased upon him rejoining her. After the deceased again joined the girl, both groups proceeded separately down the street toward their parked cars. The second encounter occurred shortly thereafter when Koeppen and Beasley approached the couple and asked for a match. The deceased stated he had no matches and there was an exchange of words. Sometime before the third and fatal encounter the defendant stumbled upon, picked up and carried with him a small clear beer mug or glass. The deceased and his girl friend had just joined a group of friends on the street near the parking lot and were telling them of their encounters with Koeppen and Beasley when again they were approached with the defendant Koeppen somewhat ahead of Beasley. Some words were exchanged and the defendant advanced on the deceased with the latter retreating and stating he did not want any hassles. With the round-handled beer glass the defendant attacked Arroyo; the glass broke; and the deceased received extensive lacerations of the face, left arm and neck. The defendant than stated to the other members of the deceased's group, "Well I

can take five of you. What's the difference, I'm bleeding, too." The deceased ran from his attacker while bleeding profusely, collapsed, and was taken to the hospital and pronounced dead on arrival. It was stipulated that the deceased died from the wounds inflicted by a sharp-edged instrument that partially severed the left jugular vein and surrounding small vessels. The defendant and Beasley were taken into custody at the scene.

In the first issue raised the defendant contends that the evidence supports only a conviction of involuntary manslaughter and that the murder conviction should be reduced to that offense. The trial court was not requested to reduce the charge from murder to manslaughter and the trial judge in his recital of his findings at the conclusion of the evidence stated, "The Court finds nothing in the evidence in this case which legally could be used to reduce the charge from murder to manslaughter." Defendant cites the statutory definition of the two offenses and asserts that the facts here support a finding that the acts causing death were accidental or reckless rather than intentional or knowing. Specifically, he states there is no direct proof that defendant had an intent to kill or any direct proof that his acts created a strong probability of death or great bodily harm.

■■ As to defendant's contention that there is no evidence that the defendant intended to kill Arroyo, in the case of *People v. Latimer*, 35 Ill.2d 178, the supreme court said on page 182:

> "We have repeatedly held that it is not necessary to show that an accused has formed an intent to kill in order to justify a murder conviction. It is sufficient to show that he voluntarily and wilfully committed an act, the natural tendency of which was to destroy another's life, with the intent being implied from the character of the act."

Again in *People v. Wilson*, 3 Ill.App.3d 481, where the defendant had stabbed the deceased and at the time of trial contended he did so with no intent to kill the court, on page 485, said:

> "While he asserted that he did not intend to kill Farland, it is not necessary in order to sustain the conviction that he deliberately formed an intent to kill. It is sufficient if at the instant of the assault he intended to do great bodily harm or knew that there was a strong probability that his acts would cause death or great bodily harm."

■■ From the evidence heard by the trial judge it is quite clear that the defendant was the aggressor and that the confrontation between the deceased and the defendant was repeated. It is further clear that there

was no provocation for the defendant's assault other than an exchange of words; that the assault was a voluntary act with a handled beer glass which resulted not only in great bodily harm but in the death of Arroyo. Such an assault as we have here of an individual with a glass object creates an intention and strong probability of great bodily harm and it is not necessary that the assailant knows that death will ensue. The trial judge who heard the evidence found the defendant's voluntary act of striking the deceased with a handled beer glass was an intentional act which the defendant knew created a strong probability of death or great bodily harm. We find no reason to disturb his findings. The State's evidence was sufficient to sustain the murder verdict.

The second issue attacks the sentence imposed on the grounds that the minimum sentence required to be imposed for a conviction of murder violates the purpose of article I, section 11, of the Illinois Constitution. Appellant cites no authority for this contention. In the case of *People v. Wilson*, 19 Ill.App.3d 625, 312 N.E.2d 30, the defendants were convicted of armed robbery and received sentences ranging from a 5-year minimum to a 15-year maximum. Two of the defendants were 17 years of age. On page 628 of the opinion the court said:

"The argument that the sentences here imposed violated the philosophy of the 1970 Constitution which provides that 'All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring offender to useful citizenship' need not long detain us. Under the new Code of Criminal Corrections (Ill. Rev. Stat., 1972 Supp., ch. 38, par. 1005 —8—1) armed robbery is a Class I felony with a minimum term of 4 years, unless the court giving consideration to the nature and circumstances of the offense and the history and character of the defendant imposes a higher minimum term. Both Wilson and Reed had prior criminal records. The sentences here imposed are well within the guidelines described by the legislature and do not appear to constitute a great departure from the fundamental law and its spirit and purpose, nor is the penalty imposed in excess of the philosophy prescribed by section 11, article I of the 1970 Constitution."

The Constitution provides: "All penalties shall be determined both *according to the seriousness of the offense and* with the etc." (Emphasis added.) The legislature which has defined the offense has also determined that murder is so serious an offense that a minimum sentence of 14 years must be imposed. Much discretion has been imposed in the trial court in fixing sentences within legislative limits, but no dis-

cretion is granted to ignore the legislative determination of statutory penalty limitations. The minimum sentence here imposed is in accordance with the seriousness of the offense as provided by the Constitution.

Accordingly, the judgment of the trial court should be and is hereby affirmed.

Affirmed.

EBERSPACHER and CREBS, JJ., concur.