THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MARIO J. GOMEZ, Defendant-Appellant.

Third District No. 3—83—0087

Opinion filed December 21, 1983.

Joseph Trujillo, of Moline, for appellant.

James T. Teros, State's Attorney, of Rock Island (John X. Breslin and Kenneth A. Wilhelm, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE ALLOY delivered the opinion of the court:

Defendant Mario J. Gomez appeals from his sentence, following conviction for residential burglary. (Ill. Rev. Stat. 1981, ch. 38, par. 19—3.) Gomez was sentenced to the mandatory minimum for the Class I felony offense, that being four years' imprisonment in the Department of Corrections. (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—1(a)(4).) He seeks to raise two issues on appeal: (1) whether this sentence violated the United States and Illinois constitutional bans against cruel and unusual punishment (U.S. Const., amend. VIII; Ill. Const. 1970, art. I, sec. 11), and (2) whether his sentence violates the equal protection of the laws as guaranteed by the United States Constitution. U.S. Const., amend. XIV.

Defendant Gomez was tried by the court and found guilty of residential burglary. The presentence report indicated that the defendant was a high school dropout, and 17 years old at the time he committed the offense. He had no significant criminal record at all. There was no evidence in aggravation presented by the State, and it argued that the appropriate sentence was the mandatory minimum of four years. (See Ill. Rev. Stat. 1981, ch. 38, pars. 1005—5—3.2, 1005—8—1(a)(4).) The court thereafter ordered commitment with the Department of Corrections for the four-year term. In so doing, the court indicated that if he had any discretion, this defendant would be a prime candidate for probation.

The first issue sought to be raised by the defendant is whether the mandatory four-year term constitutes cruel and unusual punishment, under the eighth amendment to the United States Constitution and article I, section 11 of the Illinois Constitution of 1970. In so arguing, the defense seeks to overcome the presumption of constitutionality attaching to legislative enactments. The State first contends that the issue has been waived by the failure of the defense to present the issue to the trial court. We agree, as the record is devoid of any indication that this issue or argument was presented to the trial judge at the time of, or after, sentencing of the defendant. We nevertheless note that the legislature, in enacting the residential bur-

glary statutory provisions, including the mandatory minimum jail sentence, determined that this type of burglary is a very serious offense, inherent in which is the possibility of serious danger. (See *People v. Suerth* (1981), 97 Ill. App. 3d 1005, 423 N.E.2d 1185.) In so concluding, the legislature was expressing the will of the citizens of this State, faced with the rising incidence of such burglaries and their attendant dangers, injuries, and occasional deaths. The test for the constitutionality of a criminal penalty is whether that penalty is cruel, degrading, or so wholly disproportionate to the offense committed as to shock the moral sense of the community. (*People v. Wright* (1974), 18 Ill. App. 3d 1028, 310 N.E.2d 494.) It was the moral outrage of the community which prompted the legislative enactment of mandatory sentences in the first place. While we may agree that in particular instances the mandatory imprisonment provisions are ill-suited, we would not conclude that mandatory minimum of four years for the offense of residential burglary is either cruel, degrading or wholly disproportionate to the offense as to shock the moral sense of the community. As the State correctly points out, a burglar may believe that a home is uninhabited, but can never be really sure. Further, the potential for serious damage, both physical and psychological, is present whenever someone unlawfully enters the residence of another. Illinois has taken a firm position in favor of the sanctity of the home against intrusion, and the basis of that position is well founded. As to defendant's argument that the sentence violates the Illinois constitutional provision requiring sentences to be determined according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship, we note that mandatory minimums have been upheld for a number of other crimes. (*People v. Wright* (1974), 18 Ill. App. 3d 1028, 310 N.E.2d 494 (armed robbery); *People v. James* (1976), 38 Ill. App. 3d 594, 348 N.E.2d 295 (unlawful delivery of 30 grams or more of a substance containing LSD); *People v. Koeppen* (1974), 21 Ill. App. 3d 478, 315 N.E.2d 679 (murder).) The seriousness of the offense of residential burglary has already been noted, as has the legislature's determination of what an appropriate sentence for such criminal activity should be. We find no violation of the Illinois Constitution in the sentence handed down in this case.

▮▮ ▮ The next issue raised is whether the sentencing provision violates the defendant's rights to equal protection under the law. The appropriate scope of review was set forth in *People v. Perine* (1980), 82 Ill. App. 3d 610, 615, 402 N.E.2d 847, wherein the court stated:

"In determining whether a given legislative classification denies a person the equal protection of laws, where that person is

not a member of a suspect class or has not been deprived of a fundamental right, the courts restrict their role to determining whether the particular legislative classification is rationally designed to further a legitimate State purpose. [Citations.] The equal protection clause does not mean that a State may not draw lines that treat one class of individuals or entities different from one another; the test is whether the difference in treatment is an invidious discrimination. [Citation.] There is a presumption in favor of the validity of the classification made by the legislative body and one who assails it has the burden of proving the classification to be arbitrary. [Citation.]"

The State is correct in stating that the legislature has broad latitude and discretion in classification, especially in the criminal area. (*People v. McCabe* (1971), 49 Ill. 2d 338, 275 N.E.2d 407.) If there is a rational basis for the differences in classification, then the legislative determination will be upheld.

■ In the instant case, there is a rational basis for distinguishing between residential burglary and nonresidential burglary, and that basis has already been alluded to previously. The basis is the emphasis and value placed upon the privacy and sanctity of the home. The special treatment afforded a person's right to be free from intrusion into the home was a basic freedom guaranteed in our Constitution, and has continued to receive high protection from intrusions of all natures. (See *Payton v. New York* (1980), 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371.) Furthermore, the State correctly notes other considerations which justify a difference in treatment for those violating the sanctity of a residence, as opposed to a nonresidence. It notes the propriety of a legislative determination that residential burglary contains more possibility for danger and serious harm than that of places not used as dwellings. There is a considerably greater chance of injury and danger to persons in the home context than in the burglary of a place of business. We can note that most businesses are closed at night, often with few or no persons present, or with those hired to act as guards only; while most homes at night contain people unprepared for criminal intrusion. Furthermore, the legislature may well have been concerned with protection for the elderly and the handicapped, or the young and others unable to protect themselves, when it enacted the stiff penalties for residential burglary. These people are clearly more often the victims in their homes than in the nonresidential burglary context. The legislative determination to treat residential burglars different than nonresidential burglars finds a rational basis, and we will not overturn the sentencing provisions.

550

The judgment of the circuit court of Rock Island County is affirmed.

Affirmed.

SCOTT and HEIPLE, JJ., concur.