NOTICE

Decision filed 06/04/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 241285-U

NO. 5-24-1285

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jackson County. |
| | ) | |
| v. | ) | No. 24-CF-237 |
| | ) | |
| GEORGE D. TRAVIS, | ) | Honorable |
| | ) | Ralph R. Bloodworth III, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE CATES delivered the judgment of the court.
Justices Barberis and Hackett concurred in the judgment.

**ORDER**

¶ 1   *Held*: We affirm the defendant's conviction as the State proffered sufficient evidence for a jury to find the defendant guilty beyond a reasonable doubt. In addition, we find that the defendant's ineffective assistance of counsel claim fails as the defendant suffered no prejudice. Finally, we find the trial court did not commit a sentencing error, thus there can be no plain error.

¶ 2   Following a jury trial, the defendant, George Travis, was convicted of residential burglary. The defendant was sentenced to 12 years in the Illinois Department of Corrections (IDOC) to be served at 50% with no more than 2 years of mandatory supervised release. On appeal the defendant claims that the State's evidence was insufficient to find him guilty beyond a reasonable doubt, that the defendant's trial counsel rendered ineffective assistance of counsel, and that the defendant's sentence was excessive. For the reasons that follow, we affirm the defendant's conviction and sentence.

1

¶ 3                                    I. BACKGROUND

¶ 4      On April 24, 2024, the State charged the defendant by information with one count of

burglary. 720 ILCS 5/19-1(a) (West 2022). The court appointed a public defender, and the

defendant was advised of his rights and the nature of the charges. A detention hearing was held,

after which the defendant was released with conditions pending further proceedings. On October

8, 2024, the State filed a superseding information upgrading the defendant's charge from burglary

to residential burglary, a Class 1 felony. The State alleged that the defendant "knowingly and

without authority entered into the residence of Larry Brunken, *** with the intent to commit

therein a theft ***." 720 ILCS 5/19-3(a) (West 2022). The case was set for jury trial on October

15, 2024. On that date, the trial court acknowledged the superseding information and addressed

three motions *in limine* that were filed by the State. The first was a *Montgomery*[1] motion to allow

the State to impeach the defendant with his prior domestic battery conviction if he testified. The second

was a motion to bar discussion of possible penalties for the charged offense. The third was a motion to

allow the State to introduce the defendant's conduct in an unrelated drug possession case. The

defendant's trial counsel did not object to any of these motions. The trial court granted all three

motions *in limine*.

¶ 5      That same day, at the start of jury selection, the trial court read the charge against the

defendant and admonished the prospective jurors. Among the instructions given by the trial court

to the prospective jurors was that their verdict "must be based solely on the evidence presented in

this courtroom." During *voir dire*, two prospective jurors indicated that they had recent

experiences with burglaries. Both prospective jurors additionally indicated that they had, to some

extent, personal connections with police officers. Upon further questioning, each of these

---

[1]*People v. Montgomery*, 47 Ill. 2d 510 (1971).

prospective jurors indicated that they could be fair and impartial. Defense counsel did not use a peremptory challenge or request that the prospective jurors be stricken for cause. Subsequently, both prospective jurors were selected as jurors for the defendant's trial.

¶ 6    The defendant's jury trial began on October 16, 2024. The State first called Larry Brunken. Brunken testified that the weekend prior to April 23, 2024, he had a yard sale. Following the yard sale, Brunken put signs on some of the items that remained outside, that said, "Free. Take what you want." Brunken additionally posted on Facebook about the free items. By April 23, 2024, "everything had been cleaned up already."

¶ 7    On April 23, 2024, Brunken was at a local bar and he saw the defendant. Brunken knew the defendant from Brunken's work with a non-profit that helped the homeless. Brunken testified that the defendant was playing video slots at the bar. After the defendant finished with the video slots, he pointed at Brunken and then left on his bicycle, heading in the direction of Brunken's home. Shortly after, Brunken left the bar and walked home. As Brunken approached his home from the alley, he saw the defendant and another individual carrying Brunken's safe out of the back door of his home. The defendant and the other individual put the safe in the bed of a green truck. The defendant got into the passenger seat of the truck. Brunken was able to get in front of the truck, put his hand up, and ordered the truck to stop. The driver of the truck started "revving the clutch really hard on the engine." The truck then began moving forward in Brunken's direction. Brunken moved out of the way to avoid getting hit. The defendant leaned outside of the window of the truck and said, "I'll be back." Brunken took note of the truck's license plate and called the police. After police arrived, Brunken saw that his front door had been damaged and that it was not able to lock properly. Brunken further testified that his safe, prior to being stolen, was located in the corner of his dining room. The State presented Brunken with "People's Exhibit 12" which was

3

a photograph depicting the vacant corner of his dining room where the safe had previously been located. Brunken authenticated the photograph as a fair and accurate depiction of where his safe had been placed before it was taken. Brunken stated that the safe still had its door attached prior to the defendant taking it. Brunken kept several items in the safe. Among these items was paperwork and a jewelry box with loose gems inside.

¶ 8    The State next called Officer Pawel Sawicki, employed by the Carbondale Police Department. Sawicki testified that on April 23, 2024, he was dispatched to investigate a burglary that had just occurred. The description of the suspect vehicle was an older green truck with some rust. Sawicki was provided with a partial license plate number by dispatch. Sawicki ran the partial license plate number through his "Record Management System" and the system returned a potential vehicle and an associated address. The registered owner of the potential vehicle was Richard Dunson. Sawicki went to the Dunson address and saw an older model green truck parked outside. Dunson was standing on the porch when Sawicki arrived. Sawicki spoke with Dunson who indicated that he had been driving the truck and the defendant was a passenger. Dunson told Sawicki that he and the defendant had gone to "pick up a safe" and that they brought it back to Dunson's residence. Dunson informed Sawicki that the defendant went inside of the home by himself and removed the safe from inside of the home. The defendant then placed the safe in the bed of Dunson's truck. Sawicki testified that while he was speaking with Dunson, other officers who had arrived to assist located the defendant outside of the residence and placed him under arrest.

¶ 9    Sawicki was present when the other officers retrieved the safe approximately 15 feet away from Dunson's residence. Additionally, Sawicki found the door to the safe that Dunson said was removed by the defendant. The door was located "several yards" away from the main part of the

safe. Sawicki indicated that another officer collected an "angle grinder" from Dunson's residence which Dunson said was used to cut the door off of the safe. Sawicki also learned from Dunson that a backpack on the porch belonged to the defendant. After confirming that the backpack belonged to the defendant, Sawicki loaded the safe and the backpack into his patrol vehicle and drove to Brunken's residence. Brunken was able to identify the backpack as the defendant's, noting that he saw the backpack earlier in the week when the defendant was at Brunken's yard sale. Sawicki found several items inside the backpack that belonged to Brunken, including a jewelry box with a plastic bag inside that contained several loose gems. In addition to Brunken's items, the defendant's backpack also contained tools.

¶ 10    After Brunken looked at the items removed from the defendant's backpack, Brunken provided Sawicki with a list of items that were still missing. Sawicki returned to Dunson's residence, and Dunson gave Sawicki a trash bag full of items that Dunson found in his bathroom under the sink. These items included a "data recovery kit" and paperwork that Brunken had described to Sawicki when he returned the safe to Brunken's home. During his testimony, Sawicki verified multiple body camera videos and "still frames" derived from his footage, which he had captured during his investigation. Sawicki additionally authenticated several photographs that he had taken during his investigation, which included the tools, the safe, and the door. These exhibits were subsequently entered into evidence.

¶ 11    The next witness called by the State was Richard Dunson, who testified that the defendant had "come by the house and ask[ed] if I'd go help him remove an item from a house." The defendant provided Dunson with directions to the house. Once they arrived at the residence, the defendant told Dunson to back up his truck to the porch, and the defendant went into the home. The defendant told Dunson that the man who lived at the home had given the defendant a safe in

5

exchange for the defendant helping clean out the home. According to Dunson, the defendant "drug out" the safe and threw it in the back of the truck. Dunson stated that he never got out of the truck when they were at Brunken's home. Once Dunson and the defendant returned to Dunson's residence, the defendant took the safe out of the truck, placed it on the front porch, and cut the door off "with a grinder with a cut-off disk on it." The defendant then took the safe through the inside of Dunson's residence to the back door and "threw it out." When asked by the State why Dunson was so cooperative with police when they arrived at his home on the day of the theft he stated, "I didn't know what the heck was going on."

¶ 12    The State's next witness was Officer Morgan Penrod, who was employed by the Carbondale Police Department. Penrod interviewed the defendant at the Carbondale Police Department following the defendant's arrest in connection with the theft of the safe. Penrod authenticated the video as a true and accurate depiction, and the recorded video of the interview with the defendant was played for the jury. During the interview, the defendant admitted the backpack was his and said he took the safe from Brunken's yard and put it in the truck. The defendant told Penrod that he thought that the safe was free.

¶ 13    Additional police officers were called to testify, and they further corroborated the testimony of the State's witnesses. Finally, the State called Officer Zach Whitecotton, employed by the Carbondale Police Department. Whitecotton testified that the defendant was arrested a month following the burglary and had in his possession two credit or debit cards that belonged to Brunken. Following Whitecotton's testimony, the State rested.

¶ 14    The defendant called two witnesses in his defense: Dale Bogenphol and Matthew Kren. Bogenphol testified that he had been staying at Brunken's house around the time that the defendant had taken the safe. Bogenphol also stated that he had never seen the safe inside of Brunken's home.

Kren testified that he went to a yard sale at Brunken's home and saw the safe outside on the back porch. Kren attempted to purchase the safe, but Brunken told Kren that the safe was already sold to the defendant. On cross-examination by the State, Kren stated that he was undergoing court-ordered drug treatment. Kren also admitted that he had prior convictions, including one for burglary. Following Kren's testimony, the defense rested.

¶ 15 After closing arguments by the State and defense counsel, the jury deliberated and found the defendant guilty of residential burglary. Defense counsel did not file any posttrial motions. On November 25, 2024, the trial court held a sentencing hearing and heard evidence in aggravation and mitigation. At the sentencing hearing, the trial court considered the defendant's residential burglary conviction and the defendant's other outstanding cases.[2] The State requested a total sentence of 17 years in IDOC, which included consecutive sentencing on his other matters. Defense counsel argued that the defendant be given probation. Alternatively, if the trial court found that the defendant was to be sentenced to IDOC, defense counsel requested that the defendant receive mental health treatment during his incarceration. The trial court sentenced the defendant to three years in IDOC on the defendant's plea to the drug charge and three years in IDOC for the unlawful possession of credit cards of another. The sentences on these charges were to run concurrently. The trial court then sentenced the defendant to 12 years in IDOC for the residential burglary conviction, to be served at 50% with no more than 2 years of mandatory supervised release. The trial court ordered that the sentence for the residential burglary was to run consecutively with the other convictions. The defendant's total sentence in IDOC was 15 years. Defense counsel did not file a motion to reconsider the defendant's sentence.

---

[2]The defendant entered an open plea on the morning of trial to one count of possession of methamphetamine and one count of unlawful possession of a credit or debit card of another.

¶ 16                                II. ANALYSIS

¶ 17    On appeal, the defendant claims that the evidence was insufficient to find him guilty beyond a reasonable doubt, that trial counsel was ineffective, and that the defendant's sentence was excessive.

¶ 18                        A. Sufficiency of the Evidence

¶ 19    First, we consider whether the evidence was sufficient to find the defendant guilty beyond a reasonable doubt. When reviewing a claim that the State's evidence was insufficient to support a conviction, the relevant question is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "Under this standard, the reviewing court does not retry the defendant, and the trier of fact remains responsible for making determinations regarding the credibility of witnesses, the weight to be given their testimony, and the reasonable inferences to be drawn from the evidence." *People v. Ross*, 229 Ill. 2d 255, 272 (2008). However, "merely because the trier of fact accepted certain testimony or made certain inferences based on the evidence does not guarantee the reasonableness of its decision." *Ross*, 229 Ill. 2d at 272. A conviction will be reversed where the evidence is "so unreasonable, improbable, or unsatisfactory" that there remains a reasonable doubt about the defendant's guilt. *Ross*, 229 Ill. 2d at 272. Whether the required intent exists is a question for the trier of fact, and that determination will not be disturbed on review unless there is a reasonable doubt as to the defendant's guilt. *People v. Maggette*, 195 Ill. 2d 336, 354 (2001).

¶ 20    The defendant specifically claims that the State failed to prove two essential elements of the charged offense: (1) that the defendant entered Brunken's home without authority and (2) that the defendant entered Brunken's home with the specific intent to commit a theft. We consider each

in turn. First, there were multiple witnesses who testified that the defendant entered Brunken's home while Brunken was not at home. Dunson, who was driving his green truck, testified that the defendant entered the home alone, came out with the safe, and put it in the bed of Dunson's truck. Brunken testified that when he came home from the bar, the defendant and Dunson were walking out of the back door of Brunken's home with the safe. Brunken also testified that the front door of his home had been damaged and that it was not damaged before he left for the bar. Brunken testified he had told the defendant "multiple times" that he was not allowed on Brunken's property. In addition, following the removal of the safe, the defendant and Dunson fled Brunken's home in Dunson's truck. During their attempt to escape the area near Brunken's home Dunson revved the engine, threatening to run down Brunken. The defendant was not the driver, but the defendant did nothing to stop Dunson threatening to hit Brunken with the truck. Finally, the defense called Bogenphol as a witness who testified on cross-examination that he never heard Brunken give the defendant permission to take Brunken's safe. The evidence at trial was sufficient to prove, beyond a reasonable doubt, that the defendant entered Brunken's home without authority.

¶ 21    The defendant further claims that the State failed to prove that the defendant had the specific intent to commit the theft because the evidence presented by the State was circumstantial. Intent to commit a criminal offense, however, need not be expressed, but may be inferred from the conduct of the defendant and the surrounding circumstances. See *People v. Grayer*, 2023 IL 128871, ¶ 28. As stated previously, when Brunken arrived home, he saw the defendant and Dunson exit his home with his safe and load it into the bed of Dunson's truck. Brunken told the defendant and Dunson to stop the truck. Despite this command, Dunson did not comply, and revved his engine, moving the truck forward toward Brunken. As the truck moved toward him, Brunken moved so that he would not be hit by the driver fleeing the area near Brunken's home. Dunson

9

reported that the defendant had taken the safe, by himself, out of Brunken's home, loaded the safe in the truck, cut the safe open, placed some of the contents in his backpack, and disposed of the safe. The defendant's removal of the safe from Brunken's residence, concealment of the safe at Dunson's property, and considerable efforts to access its contents collectively constitute circumstantial evidence indicating an intent to commit theft. The defendant also placed some of the stolen items from the safe into his backpack, while hiding other objects from the safe in a trash bag under Dunson's sink. The items found in the defendant's backpack and in the trash bag were identified by Brunken as items that were originally in the safe before it was taken. This conduct of parsing some of the stolen items for his immediate use, and retaining other items in a secret place, is further circumstantial evidence of the defendant's intent to commit a theft. All of these facts, when considered together in the light most favorable to the State, were sufficient to prove the defendant's intent to commit a theft.

¶ 22    The defendant challenges our findings that the evidence before the jury was sufficient because the defendant claims that the facts were introduced by "objectively unreliable witness testimony." Simply put, the defendant challenges the credibility of the witnesses. The jury, however, had the opportunity to view the witnesses as they testified and assess their credibility on both direct and cross-examination. In conjunction with the testimony, photographs and other exhibits were entered into evidence and considered by the jury. We will not disturb the jury's verdict as there is no indication that the evidence was so unreasonable, improbable, or unsatisfactory that there remains a reasonable doubt about the defendant's guilt. Therefore, considered together, the facts in evidence were sufficient to prove the defendant guilty of residential burglary beyond a reasonable doubt.

10

¶ 23                          B. Ineffective Assistance of Trial Counsel

¶ 24    A criminal defendant has a constitutional right to effective assistance of counsel at all stages of the proceedings as guaranteed by the sixth amendment. *People v. Brown*, 2017 IL 121681, ¶ 25. To establish an ineffective assistance of counsel claim, a defendant must show that counsel's performance fell below an objective standard of reasonableness and that, but for counsel's deficient performance, the result would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Simply put, two prongs make up the *Strickland* test: deficiency and prejudice. First, counsel must have made errors so serious, and counsel's performance was so deficient, that counsel was not operating as the "counsel" guaranteed by the sixth amendment. *People v. Evans*, 186 Ill. 2d 83, 93 (1999). "A court measures counsel's performance by an objective standard of competence under prevailing professional norms. To establish deficiency, the defendant must overcome the strong presumption that the challenged action or inaction might have been the product of sound trial strategy." *Evans*, 186 Ill. 2d at 93. The second prong of the *Strickland* test requires that, "but for" counsel's deficient performance, the result would have been different. *Strickland*, 466 U.S. at 687. In other words, the defendant must show deficient performance and that the deficient performance resulted in prejudice. *People v. Hughes*, 2012 IL 112817, ¶ 44. To prove that the defendant suffered prejudice, "the defendant must show that, 'but for' counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different." *People v. Lacy*, 407 Ill. App. 3d 442, 457 (2011). The defendant bears the burden of showing that both prongs of the *Strickland* test are proved. *People v. Morris*, 2014 IL App (1st) 130512, ¶ 32. We do not, however, need to evaluate whether counsel's performance was deficient if we conclude that the defendant cannot show prejudice.

*People v. Hale*, 2013 IL 113140, ¶ 17. We review ineffective assistance of counsel claims *de novo*. *In re Harlin H.*, 2022 IL App (5th) 190108, ¶ 78.

¶ 25    The defendant raises seven instances of ineffective assistance by his trial counsel. Specifically, the defendant claims that trial counsel failed to: (1) oppose the State's pretrial motion and he allowed testimony regarding an "irrelevant" crime; (2) oppose two burglary victims' participation in the defendant's trial as jurors; (3) introduce Brunken's inconsistent statement that he gave at the scene for impeachment or substantive evidence; (4) object to Brunken's claim that the defendant tried to kill him; (5) submit a jury instruction regarding the accomplice testimony of Dunson; (6) object to the State's characterization of the law in closing arguments; and finally that trial counsel failed to (7) file any posttrial motions.

¶ 26    Here, the evidence against the defendant was so overwhelming that despite trial counsel's performance, the outcome of these proceedings would not have been different. Therefore, under *Strickland*, the defendant cannot show prejudice. We have already recited those facts that we deemed sufficient to support the defendant's conviction for residential burglary beyond a reasonable doubt. Therefore, we need not repeat those facts in depth here, except to say these facts overwhelmingly proved the defendant's guilt. Briefly, the evidence showed that Brunken's front door was broken, and that Brunken's safe was in his home prior to Brunken leaving his residence on April 23, 2024. Dunson and the defendant jointly traveled to Brunken's home. Dunson indicated that the defendant removed the safe from Brunken's home, although Brunken saw the defendant and another individual removing the safe and placing it into the green truck. Brunken took down a partial license plate number which led directly to Dunson and the defendant. The officers who responded to Dunson's home found the safe, the door which had been forcibly removed, and the grinder that had been used to remove the door. Several items described by Brunken as being in the

12

safe were found in the defendant's backpack. Further police investigation revealed additional items had been secreted in a trash bag in Dunson's home. The defendant did not deny that he took the safe and his only claim was that the safe was free. Notably, the defendant was released on bond conditions and later found to be in possession of credit cards stolen from Brunken. In sum, we conclude that the evidence against the defendant was so overwhelming that there is no reasonable probability that the result of the proceeding would have been different, and therefore, the defendant cannot meet his burden of showing that he suffered prejudice. Where the defendant cannot show prejudice, we need not evaluate whether counsel's performance was deficient.

¶ 27                                     C. Sentencing

¶ 28     The defendant claims that the trial court abused its discretion in sentencing the defendant to a 12-year term in IDOC. Trial counsel, however, failed to raise this issue in a posttrial motion. Therefore, we find the issue forfeited. See *People v. Johnson*, 2024 IL 130191, ¶ 40. In the alternative, the defendant requests that his sentence be reviewed under the plain error doctrine. The plain error doctrine allows a reviewing court to reach a forfeited error under two circumstances. *People v. Moon*, 2022 IL 125959, ¶ 20. First-prong plain error review is appropriate when a "clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant." *Moon*, 2022 IL 125959, ¶ 20. Under second-prong plain error, review is warranted when a "clear or obvious error occurred and the error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *Moon*, 2022 IL 125959, ¶ 20. Under both prongs, the burden of persuasion remains with the defendant. *People v. Herron*, 215 Ill. 2d 167, 187 (2005). If the defendant fails to satisfy this burden, the procedural default must be honored. *People v. Walker*, 232 Ill. 2d 113, 124 (2009). When presented with a claim of plain

13

error, the relevant inquiry begins with whether an error occurred at all. *People v. Hensley*, 2014 IL App (1st) 120802, ¶ 45. "The failure of a defendant to show that error occurred at all defeats both an ineffective assistance claim and a claim of error under either prong of the plain error doctrine." *Hensley*, 2014 IL App (1st) 120802, ¶ 47. To begin our review of the defendant's claims under the plain error doctrine, we first consider whether there was any error at all. *Hensley*, 2014 IL App (1st) 120802, ¶ 45.

¶ 29    Here, the defendant claims that the trial court committed error when it considered an "improper" factor in aggravation.[3] The defendant specifically claims that the trial court considered the State's argument in aggravation that "the defendant's conduct caused or threatened serious harm." The defendant argues that the residential burglary statute implicitly includes conduct causing or threatening serious harm. This argument has some merit, as the crime charged is a Class 1 felony, and requires proof of entry into a dwelling place. 720 ILCS 5/19-3(a) (West 2022).

¶ 30    The State's argument before the trial court in aggravation claimed, "We believe that conduct causes or threatened serious harm, specifically notating [*sic*] the threatened part of it. When you enter somebody's home you threaten—you definitely threaten serious harm if there are people in there." In the next sentence, the State argued that the defendant was complicit in the attempt by Dunson to use his truck to run over Brunken. The State went on to argue other factors in aggravation, such as the defendant's prior history of criminality, the necessity to deter others from committing similar crimes, and the fact that the defendant had committed crimes after being released prior to the residential burglary trial. The State further argued the lack of applicable mitigating factors.

---

[3]The factors that "shall be accorded weight in favor of imposing a term of imprisonment or may be considered by the court as reasons to impose a more severe sentence" can be found in section 5-5-3.2 of the Unified Code of Corrections. 730 ILCS 5/5-5-3.2(a) (West 2022).

¶ 31     We acknowledge the generally accepted rule of law which states that "a factor inherent in the offense should not be considered as a factor in aggravation at sentencing. [Citations.]" *People v. Dowding*, 388 Ill. App. 3d 936, 942 (2009). In considering whether the trial court erred in its sentencing determination, we "consider the record as a whole, rather than focusing on a few words or statements by the trial court." *Dowding*, 388 Ill. App. 3d at 943. We agree that a distinction exists between the classification of the offenses of burglary and residential burglary. " '[R]esidential burglary contains more possibility for danger and serious harm than that of places not used as dwellings. There is a considerably greater chance of injury and danger to persons in the home context than in the burglary of a place of business.' " *People v. Bales*, 108 Ill. 2d 182, 193 (1985) (quoting *People v. Gomez*, 120 Ill. App. 3d 545, 549 (1983)). Thus, the crime of residential burglary recognizes, intuitively, that the entry into a dwelling place, where people may be present, poses a threat of serious harm to the occupants.

¶ 32     The trial court gave defense counsel the opportunity to respond to the State's arguments, and defense counsel argued the relevant mitigating factors that should be considered by the trial court. Additionally, the defendant made a statement on his own behalf. Notably, after hearing all of the arguments, the trial court indicated that it had considered the very thorough presentence investigation report of approximately 250 pages that detailed the defendant's life "from birth on." The trial court also acknowledged that the State and defense counsel strongly disagreed on whether the defendant's conduct should be considered as an aggravating factor, but did not make a finding regarding the merits of these arguments. The trial court then proceeded to impose the sentences on the various cases. Just prior to imposing the sentence on the residential burglary conviction, the trial court indicated it had "considered everything as cited here today." The trial court then sentenced the defendant to 12 years in IDOC. There is no mention in the record that the trial court

improperly relied on the State's argument in aggravation that the defendant's conduct caused or threatened to cause serious harm. Therefore, contrary to the defendant's arguments, and reviewing the record as a whole, we find that the trial court did not consider any one factor more than the others.

¶ 33    Finally, we find that the trial court did not err by imposing the defendant's sentence. The range of a sentence of imprisonment for residential burglary, a Class 1 felony, "shall be a determinate sentence of not less than 4 years and not more than 15 years ***." 730 ILCS 5/5-4.5-30(a) (West 2022). The defendant was sentenced to 12 years. Therefore, the defendant was sentenced within the statutory range for residential burglary, and his sentence was presumptively valid. See *People v. Sauseda*, 2016 IL App (1st) 140134, ¶ 12. Further, the trial court did not use the aggravating factor of the defendant's conduct that threatened or caused serious harm, to effectuate a harsher sentence than would otherwise be given. See *People v. Phelps*, 211 Ill. 2d 1, 13 (2004).

¶ 34    In sum, we find that the defendant has failed to overcome his burden of establishing that the trial court committed error. Accordingly, without error, there cannot be relief pursuant to the plain error doctrine.

¶ 35                                          III. CONCLUSION

¶ 36    The judgment of the circuit court of Jackson County is affirmed.

¶ 37    Affirmed.