THE VILLAGE OF CAMBRIA, Plaintiff-Appellee, *v.* STEVEN DUNAWAY,
Defendant-Appellant.

Fifth District    No. 81-72

Opinion filed October 20, 1981.

C. Robert Hall, of Carbondale, for appellant.

James R. Moore, of Cartersville, for appellee.

Mr. JUSTICE JONES delivered the opinion of the court:

Defendant, Steven Dunaway, appeals from a judgment of the circuit court of Williamson County which resulted in the issuance of a permanent mandatory injunction directing defendant to remove a building which he had placed in the Village of Cambria, the plaintiff. We consider whether the structure in question is a mobile home within the purview of an ordinance of the plaintiff Village and, if that structure be found to be a mobile home, whether the ordinance compels its removal.

On May 13, 1980, plaintiff filed its complaint for preliminary and permanent injunctions against defendant alleging that at the beginning of that month defendant began installing a building in violation of a Village ordinance. A hearing on the petition for preliminary injunction was commenced the following day, and plaintiff presented the testimony of its water, street and sewer superintendent, Bruce Hagler. Hagler described

the building then under construction by defendant as a prefabricated building with metal siding and a metal superstructure which had been brought to the site in halves upon flatbed trailers. Hagler related that defendant had told him that the building was going to be used as a day-care facility for children. Defendant had never applied for a permit to place the structure on the property as required by the Village's mobile home ordinance. Hagler stated that there were potential problems with the structure as it then existed, such as a lack of plumbing. However, he indicated that there was no problem with the structure that could not be remedied upon completion of the project other than its being what he termed a "mobile home."

During Hagler's testimony pictures of the structure were accepted into evidence, and the court took judicial notice of the Village ordinance, which in pertinent parts provided:

"Section 1. Definitions:

A. A *Mobile Home* is a dwelling unit, usually factory built and assembled, designed for conveyance after fabrication, on streets and highways on its own wheels or on flatbed or other trailers, and arriving at the site where it is to be occupied as a dwelling unit complete and ready for occupancy except for minor and incidental unpacking and assembly operations, and having no foundation other than wheels, blocks, skids, jacks, horses, or skirting.

* * *

Section 2.

No camper, travel trailer, or recreational van shall be occupied as a dwelling within the Village except as may be otherwise provided in this ordinance.

* * *

Section 4.

No more than one mobile home may be placed upon any lot within the Village without the written permission of all owners of contiguous properties and the issuance of a letter of permission from the Village Board. Such letter of permission shall be issued by the Board or its appointee upon proof of the written permission of the owners of the contiguous property which shall be filed for record in the Village Clerk's Office.

* * *

Section 12.

A. Location of a mobile home must be approved by the Village of Cambria through issuance of a permit by the Village Clerk. Said Village Clerk's permit shall issue only upon compliance with all sections of this ordinance in-

cluding any additional permits, letters and approvals required herein."

After the court denied defendant's motion for judgment at the close of plaintiff's case, defendant testified on his own behalf. He stated that the first half of the unit had been brought to the site 2½ weeks, and the second half, a week before the hearing. The Illinois Department of Transportation, which issued a permit to move the units over the highways, considered the units to be modular structures and not mobile homes. Defendant described the units as "modular classrooms" and said they had been used by St. Lukes Hospital in Chicago as classrooms. According to defendant, the units were not structurally equipped to accommodate wheels, and at the time of the hearing the units had been joined into one structure and placed on a permanent foundation. The foundation consisted of concrete blocks which were separately laid in a prepared foundation trench. Some of the blocks were below ground level, and others extended above. The steel frame of the structure was already bolted to the foundation with six-foot-long double-threaded bolts, and in the near future rods would be placed through the blocks and welded to the frame to complete the process. His electrician had already begun work on the project and his brother-in-law, a trained plumber, was ready to begin work although the Village had refused to issue a plumbing permit.

During his testimony defendant related a conversation he had had with the village president shortly before moving the units to Cambria. According to defendant's undisputed testimony, he described the units to the president and was told by him that they would not be considered mobile homes and that a permit would not be needed to use the structures as a day-care center in Cambria. Defendant also stated that he asked for a copy of the ordinance but was told that none was available.

Following the hearing the court denied the preliminary injunction, stating that although the structure was undeniably mobile at the time of the hearing, the real issue was whether the structure would be a mobile home at the time of completion. Since that issue could be determined only upon substantial completion of the structure, the court ruled that a hearing for permanent injunction would come after that time.

When the structure was completed and the hearing was held on the complaint for permanent injunction, the parties stipulated that the court was to consider the evidence presented at the hearing on the motion for preliminary injunction. The Village presented no further evidence, and defendant testified on his own behalf. He related that construction was completed except for the water hookup. Defendant also attempted to introduce letters of approval of the structure for use as a day-care center from both the State Fire Inspector and the Bi-County Health Department. However, an objection to those items was sustained, the court ruling that

both the letters were hearsay and went to the ultimate issue to be decided by the court.

Following the hearing the trial court entered judgment in favor of the Village and enjoined defendant "from permitting the structure now located on said property from remaining on said property." Defendant appeals asserting (1) the ordinance does not apply to the structure in question, (2) the ordinance is invalid and (3) the city is estopped to enforce the ordinance.

Defendant's uncontradicted testimony that the village president told him no copies of the ordinance were available to him, coupled with uncontradicted testimony of the president's affirmative assurances that defendant's proposed structure would not be in violation of the ordinance, raises an interesting question, whether the president induced defendant's action and thereby estopped the Village from asserting any violation of the ordinance. (See *Ganley v. City of Chicago* (1980), 81 Ill. App. 3d 877, 401 N.E.2d 1184, and *City of Evanston v. Robbins* (1969), 117 Ill. App. 2d 278, 254 N.E.2d 536.) However, in view of our disposition of the case, we need decide only the first issue.

■■ Defendant asserts that the trial court erred in ruling that the ordinance applied to him for two reasons. First, the modular structure is not a mobile home for purposes of the ordinance. Second, even if the structure is a mobile home it is not governed by the ordinance which, by its express terms, regulates only those mobile homes used as "a dwelling."

As previously noted, the ordinance attempts to define the term "mobile home," but it has done so in terms so general that easy and specific application in this case is not possible. However, construction of the term "mobile home" has been the subject of considerable litigation throughout the United States in cases interpreting both zoning law and restrictive covenants. The Illinois Supreme Court had occasion to consider the matter and interpret the extensive case law in *Brownfield Subdivision, Inc. v. McKee* (1975), 61 Ill. 2d 168, 334 N.E.2d 131. There, the court was confronted with a steel framed "double-wide" building with a steel superstructure that had been prefabricated and placed on a permanent foundation. Thus, the court in *Brownfield Subdivision, Inc.* was considering units and erection modes similar to those involved in this case. The court recognized that manufacturers and various regulating agencies used the terms "modular unit" or "sectional home" to describe the structure in question. Nevertheless, the court held that the structure fell within the generic classification of mobile home and violated a restrictive covenant's prohibition against a "structure of a temporary character, trailer, * * *." The court recognized that there was a split of authority throughout the country. It was noted that although several courts had held that a building lost its mobile home character once it was placed on a permanent

foundation, the majority of jurisdictions held that a permanent foundation does not change the structure's essential character. In adopting the majority rule the supreme court cited with approval language of the Supreme Judicial Court of Massachusetts. The Massachusetts court, when confronted with a mobile unit that had been placed on a permanent concrete foundation of 20 feet by 50 feet, stated:

"The words of the by-law, interpreted 'according to their natural import in common and approved usage' [citations], have equal application to this type of unit whether equipped with wheels or without them. They refer, we think, to this species of self con- tained unit, which frequently is in form a mobile trailer, in contrast with the conventional type of house usual in, and appropriate to, a single family residence district. In ordinary parlance the unit shown in the exhibits will be spoken of as a trailer or a mobile home, even if it has not been sold with wheels or its wheels have been taken away, and even if it has been affixed to the land. It looks like a trailer, has the qualities of a trailer superstructure, and has been built as a trailer." *Town of Manchester v. Phillips* (1962), 343 Mass. 591, 595-96, 180 N.E.2d 333, 336-37.

■■ ■ In view of our supreme court's holding in *Brownfield*, and its approval of the language in *Town of Manchester*, we conclude that the trial court properly held the structure in question to be a mobile home as defined in the ordinance. However, that the structure in question is a mobile home does not answer the question of whether it was subject to the ordinance which regulated mobile homes "occupied as a dwelling." It is axiomatic that in construing both statutes and ordinances words must be given their common and ordinary meaning (*Brownfield*, citing with approval *Town of Manchester*; *Berwyn Lumber Co. v. Korshak* (1966), 34 Ill. 2d 320, 215 N.E.2d 240; *Dean Milk Co. v. City of Chicago* (1944), 385 Ill. 565, 53 N.E.2d 612.) The issue in the case thus becomes whether this mobile home was to be occupied as a dwelling. Some guidance is offered by section 2—6 of the Criminal Code (Ill. Rev. Stat. 1979, ch. 38, par. 2—6), which defines dwelling as "a building or portion thereof, a tent, a vehicle, or other enclosed space which is used or intended for human habitation, home or residence." This definition is similar to the definition of "dwelling" given by Webster's Third New International Dictionary 706 (1961), "a building or construction used for residence: abode, habitation."

The Village argues that children "habitate" a day-care center and, thus, a day-care center is a dwelling for purposes of the ordinance. How- ever, a similar argument can be made for any commercial facility at which people spend a portion of their day. If the ordinance were intended to restrict the use of mobile homes for any and all purposes then it would have been easy to have it so state.

Because the structure involved was not intended for use as a dwelling, it was error for the court to hold it to be in violation of the ordinance. We therefore reverse the judgment of the trial court.

Reversed.

KASSERMAN, P. J., and KARNS, J., concur.