THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
DAVOR STURLIC, Defendant-Appellant.

Second District   No. 84—185

Opinion filed January 17, 1985.

G. Joseph Weller and Paul J. Glaser, both of State Appellate Defender's Office, of Elgin, and John F. Donahue, of Oak Brook, for appellant.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Phyllis J. Perko and Sally A. Swiss, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE REINHARD delivered the opinion of the court:

Defendant, Davor Sturlic, following a bench trial, was found guilty of residential burglary (Ill. Rev. Stat. 1981, ch. 38, par. 19—3), theft exceeding $300 (Ill. Rev. Stat. 1981, ch. 38, par. 16—1(a)(1)), possession of burglary tools (Ill. Rev. Stat. 1981, ch. 38, par. 19—2), and not guilty of conspiracy (Ill. Rev. Stat. 1981, ch. 38, par. 8—2(a)). Defendant was subsequently sentenced to concurrent terms of imprisonment of four years for residential burglary, three years for felony theft, and one year for possession of burglary tools.

Two issues are raised on appeal: (1) whether the trial court erred in denying defendant's motion to suppress evidence premised on an illegal search and seizure; and (2) whether the residential burglary statute is unconstitutional.

At a bench trial, David Stout testified that he lived at 1720 East 22nd Street, Apartment B, in Wheaton. While at work on the evening of December 2, 1982, and the early morning hours of December 3, he

was called to the Wheaton police station, where he identified some of his possessions which had been' in his apartment when he left for work. These included a hatchet and knife in a sheath, an AM/FM headset, AM/FM stereo radio, Minolta camera with various lenses and other pieces of photography equipment, a TV antenna, a silver chain, a jewelry box, a metal balance, an old and a new voter's registration card, and a blue flashlight. Upon returning to his apartment, he observed that the door jamb was bent, the lock on the door and the frame were broken, and the interior of the apartment was ransacked.

Jeffrey Sandkam, a police officer for the city of Wheaton, testified that on December 2, 1982, at around 9 p.m. he was investigating an unrelated burglary at 1737D Harrow Court in Wheaton. A break-in appeared to have been made by prying open a sliding glass door with a pry-type tool. It was night and raining heavily. Officer Eversole arrived and assisted him in checking the area for the perpetrator of the burglary. They split up, and while checking the rear of the townhouses in the area, he received a communication from Eversole to meet him. He proceeded on foot 500 feet through backyards and met Eversole, who had a white male subject, later determined not to be involved in the burglary, in his squad car. While there he then noticed an older blue vehicle come south and turn around. The vehicle had only one headlight operating. Eversole drove to the intersection, and the blue car was stopped. Sandkam walked over, approached the driver's door, shined his flashlight inside the car, and observed defendant as the driver and Mark Mead as the passenger. Both persons' clothes were wet.

He asked defendant to exit the vehicle, which defendant did. As he and defendant walked to the rear of the vehicle, he shined his light in the rear of the vehicle and observed a small wooden box on the right rear floor. He then asked defendant what he was doing in the area. Defendant said his car had broken down. He asked defendant if the wooden box was his, and defendant said it was not and he didn't know whose it was. Defendant said someone had borrowed his car and must have left the box there. Sandkam asked defendant if he would mind if he looked at the box and defendant said no. He then opened the right rear door of the vehicle, reached inside, took the box, and found inside the box miscellaneous property including a voter's registration card with the name of David Stout on it. Defendant said he did not know David Stout. He next looked in the front of the vehicle from the passenger's side and observed the handles of two tools on the floor, partially under the seat. He then opened the door to see what kind of tools they were, and observed they were

screwdrivers and left them there. He also saw a flashlight under the seat. He asked defendant if he (defendant) would mind if Sandkam looked in the trunk. Defendant said he didn't have a key to the trunk, and Sandkam said, "If I can get in, do you mind if I look in?" Defendant said, "What are you going to do, pop it?" Sandkam removed the keys from the ignition and tried one key in the trunk, and it opened the trunk. There were numerous items in the trunk, including the possessions which Stout identified. After having a conversation with Eversole and two other officers who had arrived, they transported defendant and Mead to the station. The location where defendant was stopped was no more than a quarter of a mile from Stout's apartment. He never issued a citation to defendant for the defective light.

Joseph Eversole, a police officer for the city of Wheaton, testified that it was dark, rainy and cold on December 2. After receiving a communication, he went to assist Sandkam with a burglary investigation. Sandkam showed him some pry marks on the back of the sliding glass door at 1737D Harrow. They decided to split up, and while driving his squad car he observed a subject come from between two buildings and run. He placed the subject in the back of his squad car and contacted Sandkam, who then met with him. While talking to Sandkam, he saw an older blue automobile that did not have a front license plate displayed and had only one headlight working. He drove around and put his squad car in a position to not allow the blue vehicle to exit the street. He walked to the passenger's side of the blue vehicle, and spoke to the passenger, Mark Mead. Both the driver and the passenger were very wet. He asked the passenger to step out and asked for identification. As he patted Mead down, he found a pair of rain-soaked gloves intertwined with a white metal necklace. The remainder of Eversole's testimony recounted Sandkam's actions with defendant, but not any conversation between Sandkam and defendant, adding only that he, Eversole, removed the screwdrivers from under the front seat that had been pointed out to him by Sandkam. The decision was made to arrest at the scene. Later he and other officers located Stout's apartment and discovered the break-in.

Following the testimony of these two State witnesses, defendant orally moved to suppress the evidence presented which was continued for a ruling until the end of the State's case.

Michael Sullivan, a police officer for the city of Naperville, and formerly for the city of Wheaton, testified that he and officer Grossman were called to assist Eversole and Sandkam, and arrived while the officers were talking with the suspects. He observed Sandkam

look inside the box and question defendant about the contents. Sandkam asked defendant if he could look in the trunk and defendant said he did not have a trunk key. He saw Sandkam look at the ring of keys, observe what appeared to be the trunk key, and ask defendant if he tried the key and unlocked the trunk, could he look in. Defendant told him to go ahead. While on the way to the police station defendant admitted he knew the items in the trunk were stolen. Later, at the police station, defendant discussed the burglary of Stout's apartment and said he was the lookout.

Following Sullivan's testimony, the trial court denied defendant's motion to suppress. Then Officer Gradie Clark testified that defendant admitted at the police station that he and Mead discussed committing a burglary, and he waited outside in the car and Mead came out with the stolen items.

Defendant testified on his own behalf, generally denying he knew Mead committed a burglary. He did not testify concerning the stop or the search of the vehicle by the police.

■ On a motion to suppress evidence illegally seized, the defendant has the burden of proving that the search and seizure were unlawful. (Ill. Rev. Stat. 1981, ch. 38, par. 114—12(b); *People v. Hoskins* (1984), 101 Ill. 2d 209, 212, 461 N.E.2d 941.) A trial court's determination on a motion to suppress evidence will not be overturned unless it is found to be clearly erroneous. (*People v. Clark* (1982), 92 Ill. 2d 96, 99, 440 N.E.2d 869.) Although a motion to suppress evidence shall be made before trial (Ill. Rev. Stat. 1981, ch. 38, par. 114—12(c)), the court may, in its discretion, conduct a hearing on a motion to suppress even though the motion is filed after trial has begun, providing that it is alleged that the evidence was illegally seized. (*People v. Flatt* (1980), 82 Ill. 2d 250, 262-63, 412 N.E.2d 509; Ill. Rev. Stat. 1981, ch. 38, par. 114—12(c).) Here, the trial court considered the motion, orally made by defendant after two key State witnesses had testified, and denied the motion after a third State's witness had testified. The defendant did not testify relevant to the stop of his vehicle, nor to the circumstances of the questioning of him and the search of the vehicle. It is in this context that the search and seizure issue arises for our review, for which the defendant has the burden of proving an unlawful search and seizure.

Defendant has not challenged the validity of the initial stop of defendant's car, and we, too, conclude the stop was valid based upon the officers' unrebutted testimony that the car was being operated without a front license plate and with only one headlight operating, in violation of provisions of the Illinois Vehicle Code (Ill. Rev. Stat. 1981,

ch. 95½, pars. 3—413(a) and 12—201(b)). (See *People v. Bradi* (1982), 107 Ill. App. 3d 594, 599, 437 N.E.2d 1285.) Although defendant does challenge the officers' justification for ordering defendant out of the car, as the reason for the stop was traffic-related, the incremental intrusion resulting from the request to get out of the car once the vehicle was lawfully stopped is a *"de minimis"* intrusion into the defendant's personal liberty not unreasonable under the fourth amendment. *Pennsylvania v. Mimms* (1977), 434 U.S. 106, 54 L. Ed. 2d 331, 98 S. Ct. 330; *People v. Bradi* (1982), 107 Ill. App. 3d 594, 599, 437 N.E.2d 1285.

■ Defendant next argues that the police were not justified in questioning Mead and defendant about the wooden box inside the car. While the initial stop of the vehicle was justified because of the traffic violations, the police were also investigating a recent burglary in the neighborhood where the vehicle was stopped. At that point in time, too, it was raining, and the occupants inside the vehicle were noticeably very wet. It is reasonable to assume the officers, in addition to the valid traffic stop, were presented with suspicious circumstances concerning Mead's and defendant's appearance and presence near the location of a burglary under investigation to warrant temporary questioning. (Ill. Rev. Stat. 1981, ch. 38, par. 107—14; *People v. Smith* (1984), 124 Ill. App. 3d 914, 920, 464 N.E.2d 1206.) Moreover, Officer Eversole, during his pat-down search of Mead, found a pair of rain-soaked gloves intertwined with a white metal necklace, another circumstance by which it could reasonably be inferred that Mead and defendant had committed an offense. In addition, prior to the questioning, Officer Sandkam had shined his flashlight into the rear of the vehicle and observed a small wooden box on the right rear floor. The fact that a flashlight was used in attempting to observe the interior of the defendant's vehicle infringed on no protected right of the defendant. *Texas v. Brown* (1983), 460 U.S. 730, 75 L. Ed. 2d 502, 103 S. Ct. 1535; *People v. Caserta* (1984), 123 Ill. App. 3d 608, 612, 463 N.E.2d 190.

After engaging defendant in conversation regarding what he was doing in the area and, after learning from defendant that the wooden box was not his and that defendant did not know whose it was, Officer Sandkam obtained defendant's permission to examine the box. There is no evidence that this search and seizure of the wooden box was not consensual. (See *People v. Smith* (1984), 124 Ill. App. 3d 914, 919-20, 464 N.E.2d 1206.) Finding a voter's registration card in the box with a person's name other than Mead and defendant, and which name defendant said he did not know, presented an additional suspi-

cious circumstance to the officers. Officer Sandkam next observed in plain view the handles of two tools on the floor of the vehicle, partially under the seat. Probable cause for the subsequent seizure of what the officers determined were two screwdrivers existed, as the screwdrivers, under the circumstances present here, may be associated with criminal activity and be useful as evidence of a crime. (See *Texas v. Brown* (1983), 460 U.S. 730, 75 L. Ed. 2d 502, 103 S. Ct. 1535; *United States v. Ross* (1982), 456 U.S. 798, 72 L. Ed. 2d 572, 102 S. Ct. 2157; *People v. Smith* (1983), 95 Ill. 2d 412, 447 N.E.2d 809.) The officers here knew that the burglary they were investigating involved an entry with a pry-type tool.

■ Finally, the search of the trunk of defendant's vehicle may be justified as consensual in view of Officer Sullivan's unrebutted testimony (see *People v. Smith* (1984), 124 Ill. App. 3d 914, 919, 464 N.E.2d 1206), or based upon probable cause to believe contraband was present (see *People v. Smith* (1983), 95 Ill. 2d 412, 447 N.E.2d 809). The uncontroverted testimony of the officers, under the totality of the facts and circumstances known to them at the time of the trunk search, would justify a reasonable person in believing contraband was present in the trunk. For the foregoing reasons, the trial court's denial of the motion to suppress here was not manifestly erroneous.

■ Defendant's second contention on appeal is that the residential burglary statute (Ill. Rev. Stat. 1981, ch. 38, par. 19—3) is unconstitutional because there is no real distinction between it and the burglary statute (Ill. Rev. Stat. 1981, ch. 38, par. 19—1), and because the residential burglary statute fails to give notice of what conduct is prohibited. In advancing the former contention, defendant maintains there is no distinction between burglary and residential burglary, other than their penalty provisions, because "dwelling," which is referred to in the residential burglary statute and is defined in section 2—6, is not limited to residences, but includes buildings, housetrailers, watercraft, aircraft, motor vehicles, and railroad cars as also set forth in the burglary statute.

The burglary statute provides:

"(a) A person commits burglary when without authority he knowingly enters or without authority remains within a building, housetrailer, watercraft, aircraft, motor vehicle as defined in The Illinois Vehicle Code, railroad car, or any part thereof, with intent to commit therein a felony or theft. This offense shall not include the offenses set out in Section 4—102 of The Illinois Vehicle Code, nor the offense of residential burglary as defined in Section 19—3 hereof.

(b) Sentence.

Burglary is a Class 2 felony." (Ill. Rev. Stat. 1981, ch. 38, par. 19—1.)

On the other hand, the residential burglary statute provides:

"A person commits residential burglary who knowingly and without authority enters the dwelling place of another with the intent to commit therein a felony or theft.

(b) Sentence. Residential burglary is a Class 1 felony." (Ill. Rev. Stat. 1981, ch. 38, par. 19—3.)

The general definition of dwelling in the Criminal Code of 1961 is as follows:

" 'Dwelling' means a building or portion thereof, a tent, a vehicle, or other enclosed space which is used or intended for use as a human habitation, home or residence." Ill. Rev. Stat. 1981, ch. 38, par. 2—6.

There is a strong presumption that legislative enactments are constitutional, and one who asserts otherwise has the burden of establishing the constitutional violation. (*Sayles v. Thompson* (1983), 99 Ill. 2d 122, 124-25, 457 N.E.2d 440.) The fundamental in statutory construction is to ascertain the intention of the legislature and then to give effect to it. (*People v. Rink* (1983), 97 Ill. 2d 533, 539, 455 N.E.2d 64.) It is our duty to construe acts of the legislature so as to affirm their constitutionality and validity, if it can be reasonably done, and further if their construction is doubtful, the doubt will be decided in favor of the validity of the law challenged. *People v. Davis* (1982), 93 Ill. 2d 155, 161-62, 442 N.E.2d 855.

It is clear from the language used by the legislature that the residential burglary statute was intended to apply to burglaries of structures intended for use as residences. (See *People v. Sexton* (1983), 118 Ill. App. 3d 998, 999-1000, 455 N.E.2d 884; *People v. Dawson* (1983), 116 Ill. App. 3d 672, 674-75, 452 N.E.2d 385; *cf. Village of Cambria v. Dunaway* (1981), 101 Ill. App. 3d 609, 613, 428 N.E.2d 536.) The term "dwelling," contained in the residential burglary statute, is defined as "a building or portion thereof, a tent, a vehicle, or other enclosed space which is used or intended for use *as a human habitation, home or residence.*" (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 38, par. 2—6.) On the other hand, it is evident that the offense of burglary by its specific terms does "not include *** the offense of residential burglary as defined in Section 19—3 ***." (Ill. Rev. Stat. 1981, ch. 38, par. 19—1.) Burglary now covers the entry into buildings and other specified structures not used as residences.

Thus, the burglary statute and the residential burglary statute

clearly achieve different purposes and do not, as defendant contends, prohibit the same conduct, but prescribe different penalties. Although defendant has also cited and argued the applicability of *People v. Mc-Cabe* (1971), 49 Ill. 2d 338, 275 N.E.2d 407, we do not find this to be a statutory classification case under which an equal protection argument might apply.

■ Defendant has also generally asserted that the residential burglary statute on its face is violative of the due process clause of the United States Constitution because it fails to adequately give notice as to what action or conduct is prohibited. This appears to be a constitutional challenge on the basis of vagueness of the statute. However, since conduct is alleged to which the statute clearly applies, defendant's facial challenge to the vagueness of the statute must fail. (*People v. Matkovick* (1984), 101 Ill. 2d 268, 276-77, 461 N.E.2d 964.) Vagueness challenges to statutes which do not involve first amendment freedoms must be examined in the light of the facts of the case at hand, and defendant has not shown that the statute does not clearly prohibit the conduct with which he was charged. 101 Ill. 2d 268, 276-77, 461 N.E.2d 964.

■ Defendant also has attacked the mandatory four-year minimum sentence for residential burglary, contending generally that such a penalty for this offense is violative of equal protection, due process and the "proportionality concept" under article I, section 11 of the Illinois Constitution. (Ill. Const. 1970, art. I, sec. 11.) In support of this broad statement of unconstitutionality, defendant presents only brief argument. He asserts that it is a gross deviation from reasonable proportionality to prescribe the same penalty for the residential burglar as is statutorily provided for the offenses of indecent liberties with a child (Ill. Rev. Stat. 1981, ch. 38, par. 11—4) and aggravated kidnaping other than for ransom (Ill. Rev. Stat. 1981, ch. 38, par. 10—2). In this regard, he argues "the punishment does not fit the crime."

These scant arguments are without merit. The legislature has the power to declare and define conduct constituting a crime and to determine the nature and extent of punishment for it. (*People v. Taylor* (1984), 102 Ill. 2d 201, 205, 464 N.E.2d 1059.) Such legislation will not be nullified by courts unless it violates a constitutionally assured right. (*People ex rel. Carey v. Bentivenga* (1981), 83 Ill. 2d 537, 542, 416 N.E.2d 259.) The appellate court in *People v. Gomez* (1983), 120 Ill. App. 3d 545, 458 N.E.2d 565, has already rejected an equal protection challenge to the sentencing provision for residential burglary as compared to burglary. (120 Ill. App. 3d 545, 548-50, 458 N.E.2d 565.) The equal protection clause requires equality between groups of

persons similarly situated; it does not require quality or proportionality of penalties for dissimilar conduct. (*People v. Bradley* (1980), 79 Ill. 2d 410, 416-17, 403 N.E.2d 1029.) We are not persuaded that any valid equal protection argument can be made here by comparing residential burglary with other dissimilar criminal offenses such as indecent liberties with a child and aggravated kidnaping other than for ransom as advanced by defendant.

Nor has-defendant developed any due process argument against the residential burglary penalty provision such as has been recognized in recent decisions of our supreme court. (See, *e.g., People v. Wagner* (1982), 89 Ill. 2d 308, 433 N.E.2d 267; *People v. Bradley* (1980), 79 Ill. 2d 410, 403 N.E.2d 1029.) No showing has been made by defendant that the challenged penalty is clearly in excess of the very broad and general constitutional limitations applicable.

■ Lastly, we consider whether the penalty provision making the sentence for residential burglary a Class 1 felony is a violation of article I, section 11, of the Illinois Constitution, which provides, *inter alia*, that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." (Ill. Const. 1970, art. I, sec. 11.) In *People v. Taylor* (1984), 102 Ill. 2d 201, 464 N.E.2d 1059, our supreme court stated:

> "Article I, section 11, of the Constitution is applicable to the legislature as well as to courts. Section 11 is directed to the legislature in its function of declaring what conduct is criminal and the penalties for the conduct. It is directed to the judiciary in that it requires courts not to abuse discretion in imposing sentences within the framework set by the legislature. (3 Record of Proceedings, Sixth Illinois Constitutional Convention 1393; *People v. Moore* (1973), 15 Ill. App. 3d 691, 693.) Thus section 11 requires the legislature, in defining crimes and their penalties, to consider the constitutional goals of restoring an offender to useful citizenship and of providing a penalty according to the seriousness of the offense. This court has observed that there is no indication that the possibility of rehabilitating an offender was to be given greater weight and consideration than the seriousness of the offense in determining a proper penalty. *People v. Waud* (1977), 69 Ill. 2d 588, 596." 102 Ill. 2d 201, 205-06, 464 N.E.2d 1059.

It is apparent that the legislature has placed emphasis and value upon the privacy and sanctity of a place used as a residence in determining the seriousness of the penalty for the crime of residential bur-

glary. The legislature has determined that residential burglary contains more possibility for danger and serious harm than places not used as dwellings. (See *People v. Gomez* (1983), 120 Ill. App. 3d 545, 549, 458 N.E.2d 565.) It is within the legislative province to define offenses and determine the penalties required to protect the interests of our society. (*People v. Taylor* (1984), 102 Ill. 2d 201, 206, 464 N.E.2d 1059.) We cannot say that the legislature did not consider rehabilitation of the offender in not providing for probation as a possible sentence, but conclude that greater weight was given by the legislature to the serious nature of an unlawful entry into a dwelling used as a home or residence in determining a proper penalty. We do not find the penalty called for in section 19—3 is violative of section 11 of article I.[1]

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

SCHNAKE and STROUSE, JJ., concur.

---

[1]We note that on June 25, 1984, the State filed notices of appeal in the supreme court in direct appeals from the circuit court pursuant to Supreme Court Rule 302(a) in People v. Bales, No. 60347, People v. Buckley, No. 60348, and People v. Dorsano, No. 60349, consolidated, where the residential burglary statute was held unconstitutional. As of the date this opinion was filed, oral argument in these consolidated cases has not been set.