THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BERNARD WILLIAM FAIRMAN, Defendant-Appellant.

Fourth District   No. 4—88—0471

Opinion filed May 4, 1989.

Daniel D. Yuhas and Judith L. Libby, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Kenneth R. Boyle, Robert J. Biderman, and James Overholt, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KNECHT delivered the opinion of the court:

Following a stipulated bench trial, the circuit court of Champaign County found defendant Bernard Fairman guilty of the offenses of unlawful possession of heroin and unlawful possession with the intent to deliver cocaine (Ill. Rev. Stat. 1987, ch. 56½, pars. 1402(b), 1401(b)(2)). Defendant appeals contending the trial court erred in denying his pretrial motion to suppress evidence seized at the time of his arrest. We affirm.

At the hearing on the motion to suppress, defendant called Officer Albert Morgan of the City of Champaign police department. Morgan testified before his shift began late on October 3, 1987, Sergeant Jerry Gamble advised him to be on the lookout for a car suspected to have been involved in a series of area shootings that occurred within the past week. Gamble gave Morgan a description of the car, a red and white Oldsmobile Cutlass (Oldsmobile), and its license number. Gamble indicated one of the occupants of the vehicle may be an individual known as "Mr. X." Gamble had information that Mr. X, a black male about 5 feet 10 inches in height, had murdered a man less than 24 hours earlier. Mr. X was thought to be a member of a gang out of Chicago that was registered at the Red Roof Inn in Champaign.

Morgan testified on October 4, 1987, he observed two individuals leave from the Red Roof Inn and enter the exact vehicle described by Sergeant Gamble. Morgan observed the Oldsmobile twice change parking spaces within the motel parking lot. Morgan followed the car as it exited the lot and immediately radioed Gamble advising him of the location of the Oldsmobile. Morgan tailed the vehicle to a parking lot at 1402 North Market Street. The car parked and its occupants emerged. Morgan again advised Gamble of his location and beckoned the suspects to approach the squad car. The Oldsmobile had not violated any traffic laws and no sirens, lights or weapons were utilized by the police. When the suspects complied with Morgan's request, he instructed them to place their hands on the hood of the squad car while he conducted a pat-down search for weapons. No weapons were found. The officer proceeded to ask for identification and learned the driver was Jerry Lee Fairman and the passenger was his brother, the defendant.

At that point, Officers Eaton and Gamble arrived on the scene. A warrant check was conducted and the radio dispatch advised the officers there was an outstanding warrant out on defendant. Officer Eaton placed defendant under arrest while advising him of the outstanding warrant. Defendant immediately opened his right hand and dropped a clear plastic tube that was seized as evidence.

The State called Officers Eaton and Gamble. Officer Eaton testified he accompanied Sergeant Gamble to the scene of the arrest after Morgan radioed in his location to the station. Eaton said he had recently learned there was an outstanding arrest warrant out on defendant when a computerized investigation was conducted which compiled information on all known occupants of the suspected Oldsmobile. Upon arriving at the scene at 1402 North Market, Eaton inquired as to the identity of the car's occupants. When he learned Morgan was questioning defendant, Eaton remembered the outstanding warrant and radioed into the station to confirm that knowledge. Defendant dropped the evidence in question when Eaton placed him under arrest.

Sergeant Gary Gamble testified the Oldsmobile was seen in the vicinity of where a stabbing had occurred on September 27, 1987. The victim identified his assailant as Mr. X, a gang member from Chicago. The police had information the gang was staying at the Red Roof Inn. The victim later suffered a fatal gunshot wound on October 3, 1987. The suspected killer was Mr. X, whose mode of transportation was thought to be the Oldsmobile. At a briefing on October 3, 1987, at 11 p.m., Gamble relayed this information to Morgan and others, along with a description of the Oldsmobile, its license number, and a description of Mr. X as a black male with close-cropped hair in his early twenties, around 6 feet tall and weighing 180 pounds. The trial court found the stop was justified based on Officer Morgan's articulable suspicion that one of the occupants of the Oldsmobile may have been Mr. X, who was thought to be involved in the recent criminal activities. Having found nothing the police did on the date and time in question was improper, the court denied the motion to suppress evidence and the case proceeded to a stipulated bench trial.

On a motion to suppress evidence, the defendant has the burden to make a *prima facie* showing the evidence was obtained by an illegal search and seizure. (*People v. Neal* (1985), 109 Ill. 2d 216, 218, 486 N.E.2d 898, 899.) A reviewing court will not reverse the trial court's finding on a motion to suppress evidence unless it is determined to be manifestly erroneous. (*People v. Holloway* (1981), 86 Ill. 2d 78, 426 N.E.2d 871; *People v. Reynolds* (1983), 94 Ill. 2d 160, 445 N.E.2d 766.) The only question before us is whether the contraband seized as evidence after defendant's arrest on an outstanding warrant was the fruit of an illegal stop. The State contends it was a reasonable investigatory stop pursuant to *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868, and the Illinois codification of that case by section 107—14 of the Code of Criminal Procedure of 1963

(Ill. Rev. Stat. 1987, ch. 38, par. 107—14). We agree.

■ Section 107—14 provides a police officer may stop a person in a public place for a reasonable amount of time when the officer reasonably infers from the circumstances the person has committed, is committing, or is about to commit an offense. (Ill. Rev. Stat. 1987, ch. 38, par. 107—14.) A reasonable stop is based on objective, articulable facts coupled with rational inferences, rather than an officer's subjective, nonspecific hunch. (*Terry*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868; *People v. McGowan* (1977), 69 Ill. 2d 73, 370 N.E.2d 537.) It is proper for a police officer to rely on information received through official police communication channels to justify an investigatory stop. (*People v. Brown* (1980), 88 Ill. App. 3d 514, 410 N.E.2d 505; *Village of Gurnee v. Gross* (1988), 174 Ill. App. 3d 66, 528 N.E.2d 411.) Once an individual is stopped for questioning, an immediate but limited search of the person for weapons may be conducted if it is reasonable for the officer to suspect he or someone else is in danger of attack. (Ill. Rev. Stat. 1987, ch. 38, par. 108—1.01; *McGowan*, 69 Ill. 2d 73, 370 N.E.2d 537; *People v. Roberts* (1981), 96 Ill. App. 3d 930, 422 N.E.2d 154.) Probable cause to arrest or search is not required of a stop and frisk. *People v. Smithers* (1980), 83 Ill. 2d 430, 434, 415 N.E.2d 327, 330.

■ Here, we believe the initial stop of defendant by Officer Morgan was for investigative purposes in accord with *Terry* and the Illinois "stop and frisk" statutes. Officer Morgan testified he stopped defendant and his brother for questioning after they had exited the Oldsmobile on their own accord. The decision to question the men was based on the information gleaned from Sergeant Gamble at the October 3, 1987, briefing. In addition, Morgan articulated several facts justifying the stop, namely that the Oldsmobile under investigation exhibited suspicious behavior in the parking lot of the Red Roof Inn where the gang thought to be responsible for the recent shootings was registered. We find there were specific and articulable facts stated by Officer Morgan which warranted the initial stop. See *People v. Solis* (1985), 135 Ill. App. 3d 991, 482 N.E.2d 207.

■ Morgan's decision to pat down the suspects for weapons before questioning them was explained by his testimony he thought at least one of the men was armed and somehow related to the Oldsmobile in question and the recent shootings. When no weapons were found, Morgan began questioning the suspects pursuant to the statutory directive. (Ill. Rev. Stat. 1987, ch. 38, par. 107—14.) Immediately Officers Eaton and Gamble arrived on the scene and Eaton recognized defendant's name in relation to an outstanding arrest warrant.

This knowledge was confirmed via radio dispatch. The evidence at issue in the motion to suppress was not recovered by the police until defendant dropped the vial from his hand when he was arrested by Officer Eaton on the valid warrant. We conclude the contraband seized was the fruit of a lawful arrest which timely followed a valid investigatory stop.

The judgment of the circuit court of Champaign County denying defendant's motion to suppress evidence is affirmed.

Affirmed.

LUND and GREEN, JJ., concur.