THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. DAVID HAMILTON, Defendant-Appellee.

Fifth District   No. 5—92—0684

Opinion filed October 26, 1993.

WELCH, J., dissenting.

Robert Haida, State's Attorney, of Belleville (Norbert J. Goetten, Stephen E. Norris, and Mary H. Doyle, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Daniel M. Kirwan and Janet Gandy Fowler, both of State Appellate Defender's Office, of Mt. Vernon, for appellee.

JUSTICE LEWIS delivered the opinion of the court:

The State appeals the circuit court's order granting defendant's, David Hamilton's, motion to quash arrest and suppress evidence. We affirm for the reasons set forth below.

At the hearing on defendant's motion to suppress evidence, defendant testified that on April 2, 1992, he was a passenger in his own car, which was being driven by Neon Bryant. On that date, a police officer stopped the car and informed defendant and Bryant that a car matching the description of their car had been reported stolen. The officer asked defendant and Bryant for identification, and defendant said he gave the officer identification for himself and for his car. The officer ran a check on his identification, and the check came back clear.

The officer had defendant and Bryant get out of the car and did a pat-down search of them. They had been outside the car for 10 to 15 minutes when the check on Bryant revealed that there was an outstanding warrant on Bryant. Defendant stated: "[The officer then] looked in [the car] and he seen a jar full of gold cleaner for my gold tooth." The officer asked defendant what it was, and defendant told him it was gold cleaner for his tooth. The police officer called other officers to come to the scene.

Defendant was placed in a squad car while another officer tested the contents of the jar. Defendant stated that neither he nor Bryant gave anyone permission to search the car. Subsequently, an

officer arrived with a dog, and the officer with the dog searched the car. The search revealed a gun under the hood of defendant's car, and defendant was placed under arrest at that time.

On cross-examination, defendant admitted that his front windshield on his car was cracked. He further admitted that the plates on the car belonged to a Renault (the car involved here was an 1982 Chevrolet Caprice Classic), but he stated that he was in the process of having the plates transferred. Defendant testified that Bryant was placed under arrest at the time the check revealed that he had an outstanding warrant.

Defendant stated that the gold cleaner was in a pill bottle with a label on it that stated "gold cleaner." Defendant described the gold cleaner as a white powder.

Illinois State Trooper Chris Tracy testified that he had been a trooper for three years, and that he was on duty on April 2, 1992. At about 6:30 that evening, he heard an ISPERN broadcast that there was a blue Chevy, early 1980's, stolen during an armed robbery. Trooper Tracy saw defendant's blue Chevy proceeding westerly on Highway 40, thought the car matched the description on the broadcast, and turned around and followed defendant's car. Trooper Tracy ran a check on the license plates of defendant's car even though the plates were a different number than those reported in the ISPERN broadcast. The check of the license plates came back as being registered to a Renault, leading Trooper Tracy to believe that the plates had been switched. Trooper Tracy also noted that defendant's car had a shattered windshield.

Trooper Tracy notified police headquarters that he was going to stop defendant's car, which he did. After defendant's car was stopped, Trooper Tracy asked defendant and Bryant over his public address speaker to raise their hands where he could see them. Trooper Tracy stated he was treating the persons in the car as though they were armed. Tracy then came to the passenger side of defendant's car and had defendant get out of the car. Tracy conducted a pat-down search of defendant and asked defendant to step in front of the car.

Tracy then had Bryant slide over to the passenger side of the car and get out. Tracy also conducted a pat-down search of Bryant. During the pat-down search of Bryant, Tracy explained to defendant and Bryant that he had stopped them because of the possibility of the car being stolen. Defendant told Tracy that the car belonged to him. Tracy's pat-down search of the two men did not disclose any weapons.

After both defendant and Bryant got out of the car, Tracy noticed a prescription bottle lying on the front passenger seat. Tracy picked up the bottle. Tracy could see through the bottle, and he saw that the contents were a white powder. Tracy stated that the label on the container said "gold tooth polish." Tracy asked defendant about the container, and defendant told Tracy that the bottle contained what the label said, gold tooth powder.

When Tracy asked defendant and Bryant for identification, neither had their ID's with them but both told Tracy their names and dates of birth. Tracy went to the squad car and gave the names to the dispatcher to run a check on them. Defendant's check came back clear, *i.e.*, he had a valid driver's license and had no outstanding warrants for his arrest. Bryant's check came back as no record on file, which indicated that Bryant did not have a driver's license. This fact led Tracy to believe that Bryant was lying as to who he was, and Tracy confronted Bryant about this. Bryant then told Tracy his true name, and when Bryant's name was checked the second time, it was revealed that there was an outstanding warrant for Bryant's arrest out of Sangamon County for the offense of criminal sexual assault. The record does not reflect whether Bryant had a valid driver's license; however, Bryant was not issued a ticket for not having a driver's license. Tracy placed Bryant under arrest at about 6:45 p.m., because of the warrant. Tracy again searched Bryant after the arrest and found two rock-like substances on Bryant's person. When asked what the substances were, Bryant told Tracy that the rocks were also soap for gold teeth. Tracy found the explanation to be suspicious.

After arresting Bryant, Tracy called police headquarters and told them he had Bryant in custody. Tracy also asked that a canine unit and someone with a field test kit come to his location. Tracy stated that he placed this call at about 7:05 p.m. Tracy explained that he wanted the white powder in the prescription bottle tested to see if it was cocaine, and that he wanted the dog unit to see if there were other drugs in the car.

Trooper Kimble was the first officer to arrive in response to Tracy's call for assistance. Tracy had Kimble place defendant, who was handcuffed, in the back of Kimble's squad car. Next, Sergeant Runyon and Master Sergeant Bramlett arrived at about 7:15 or 7:20 that evening. Runyon did a field test of the white powder and the rock-like substances, and the test came back negative for cocaine. Bramlett advised Tracy to wait for the canine unit before he did anything else.

Tracy testified that Trooper Parker arrived with a dog at about 7:40 p.m. At that time, the dog was placed inside the car, and although it exhibited great interest, the dog did not "alert" on anything. The dog was then walked around the exterior of the car, where it alerted on the right front grill area of the car. The hood of the car was opened, and a loaded revolver was discovered behind the car's battery. Tracy ran a criminal check on defendant and found that he was a convicted felon. At about 8 p.m., Tracy placed defendant under arrest for unlawful use of a weapon by a felon.

When questioned by the court, Tracy admitted that he had no search warrant for the car, that he had no arrest warrant for defendant, and that he was not impounding the car. Further, defendant was not under arrest for a stolen vehicle, and defendant was not under arrest for his "gold tooth powder." Tracy also told the court that defendant's car was properly registered and that he did not issue a traffic citation to defendant. Tracy stated that the reason he held defendant after the field test came back negative was because Bramlett thought that the white powder might be a cutting agent and that there might be cocaine hidden in the car. All of the officers present disbelieved the "gold tooth story." They also thought the rock-like substances were going to be sold as a look-like for crack cocaine.

Sergeant John Runyon of the Illinois State Police confirmed Tracy's testimony that he came to the scene of defendant's car in response to Tracy's call on April 2, 1992, that he ran a field test on a white powder substance for the presence of cocaine, and that the test resulted in a negative finding.

Trooper Lynn Parker testified that he brought his dog to the scene of defendant's car on April 2, 1992, at Tracy's request. Parker initially had the dog search the passenger compartment, but the dog did not alert. Parker explained that when the dog alerts, his breathing pattern changes and he breathes more rapidly, the dog becomes "perpendicular," and the dog either bites or scratches the area to indicate the presence of an illicit substance. His dog was trained to detect the odor of cannabis, heroin, methamphetamine, cocaine, and nitrates, including gun powder.

After searching the interior of the car, Parker asked Tracy what would happen now. Tracy told him that if nothing was found, he would have to release the car to defendant. Parker then walked the dog around the outside of the car, and the dog alerted on the right side of the front grill. The hood of the car was opened and

the gun was found. Parker conducted his search of the car at about 7:45 that night.

In arguing his motion, defendant conceded that the police had reasonable suspicion to justify stopping his car, that the pat-down searches were permissible, and that the pill bottle was in plain view. However, defendant contended that after the field test of the white powder came back negative at 7:20 p.m., the police no longer had any reason to detain him and the subsequent warrantless search of his car by the dog unit was illegal. Therefore, since he was illegally detained after the completion of the field test, the gun which was found as a result of the illegal search was inadmissible. The court agreed and granted defendant's motion to suppress the evidence of the gun. The State appeals.

On appeal, the State argues that the court found defendant's detention was illegal from the time of the initial stop and presents its arguments as to why the defendant was not illegally detained. We do not agree that the court so held, but even if that was the court's determination, we may uphold the court's judgment on any ground warranted regardless of whether it was relied upon by the court and regardless of whether the court's reasoning was correct. (*People v. Holloway* (1985), 131 Ill. App. 3d 290, 475 N.E.2d 915.) In any event, we will present our analysis of this case in accord with the State's arguments.

We agree with the State that the initial stop of defendant's car was a permissible investigatory stop under *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868. In *Terry*, the Supreme Court held that an officer may stop and temporarily detain a motorist for the purpose of a limited investigation if the officer has specific, articulable facts, taken together with reasonable inferences drawn from the officer's experience, to justify the investigative stop. (*Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868; *People v. Stewart* (1993), 242 Ill. App. 3d 599, 610 N.E.2d 197.) Whether an officer had sufficient information to make an investigative stop depends on the facts of each particular case, and unless a court's decision in this regard is manifestly erroneous, a reviewing court will not disturb the trial court's determination. (*People v. Matlock* (1992), 223 Ill. App. 3d 498, 585 N.E.2d 238.) Information received by a police officer through official police communication channels can be relied upon by an officer to justify an investigatory stop. (*People v. Fairman* (1989), 182 Ill. App. 3d 497, 538 N.E.2d 227.) Further, an officer may conduct an immediate and limited search of a person upon stopping a car if the officer reason-

ably believes that he or someone else is in danger of attack. (*People v. Fairman* (1989), 182 Ill. App. 3d 497, 538 N.E.2d 227.) Probable cause is not necessary to conduct a stop and frisk. (*People v. Fairman* (1989), 182 Ill. App. 3d 497, 538 N.E.2d 227.) Here, the totality of the circumstances would have justified the trial court finding that Trooper Tracy's initial stop and frisk of defendant and Bryant was proper.

The record revealed that Tracy received a radio dispatch regarding an armed robbery in which a car was stolen. Tracy's testimony established that defendant's car matched the description of that vehicle. While there were other questions that went unasked and unanswered about the circumstances of the armed robbery, such as when did it occur, where was the location of the armed robbery and was defendant's car in close proximity to the crime, and was there a description of the perpetrators of the armed robbery given and did defendant and his companion match that description, Trooper Tracy was still justified in stopping defendant's car. This is so since in addition to the car matching the description of the stolen vehicle, the license plates on defendant's car belonged to a Renault. This information presented specific, articulable facts that justified the initial investigatory stop of defendant's car.

Similarly, the trial court could properly find that Trooper Tracy was entitled to frisk both defendant and Bryant upon stopping the car. Tracy's information was that an armed robbery had been committed, which would lead the officer to reasonably believe that the occupants of the car may be armed.

With regard to the evidence of the prescription bottle containing a white powdery substance, the seizure of this evidence was legal as the vial was in plain view on the front passenger seat of the car. (*People v. Sturlic* (1985), 130 Ill. App. 3d 120, 474 N.E.2d 1.) At this point in time, a trial court could justifiably find from the evidence that Trooper Tracy had probable cause to search defendant, Bryant, and defendant's car.

Where the problem arises in this case is whether the warrantless search of defendant's car was legal at the time of the search. As this court pointed out in *People v. Smith* (1991), 208 Ill. App. 3d 44, 566 N.E.2d 939, the brevity of the stop is an important factor in a *Terry* stop in determining whether the stop is unreasonable. Here the defendant was detained for at least one hour, while the officer allayed his suspicions. Trooper Tracy called and requested a field test of the substance he found in the car. Once the white powder tested negative for cocaine, Trooper Tracy no longer had proba-

ble cause or even a reasonable suspicion to believe that defendant possessed a controlled substance. "Mere suspicion or curiosity is not enough to justify a search." (*Stewart*, 242 Ill. App. 3d at 605, 610 N.E.2d at 202.) We cannot find that the trial court was manifestly erroneous when it determined that defendant was illegally detained after the completion of the field test and that the search of his car was illegal.

The law is well settled that, in order to conduct a warrantless search of a vehicle, the circumstances must fall within an exception to the warrant requirement. (*People v. Kolody* (1990), 200 Ill. App. 3d 130, 558 N.E.2d 589.) A warrantless search is permissible if an officer has probable cause to believe there is contraband in the car. (*People v. Clark* (1982), 92 Ill. 2d 96, 440 N.E.2d 869; *People v. Kolody* (1990), 200 Ill. App. 3d 130, 558 N.E.2d 589.) In determining if probable cause exists to justify the search, the totality of the circumstances known to the officer *at the time of the search* must be considered. *People v. Kolody* (1990), 200 Ill. App. 3d 130, 558 N.E.2d 589.

In the case *sub judice*, we cannot say it was manifestly erroneous for the trial court to find that Trooper Tracy did not have probable cause to believe that there was contraband in defendant's car at the time of the search. Trooper Tracy initially stopped defendant's vehicle because he thought it was stolen during an armed robbery. This information would not lead a reasonable person to believe that the car contained contraband. While the discovery of a white powdery substance may give rise to a reasonable belief that there was contraband contained in the car, that belief was dispelled upon the testing of the substance and the results of the tests being negative for cocaine. Thus, since Trooper Tracy had dispelled any reason to detain defendant prior to the time of arrival of the dog, there was no probable cause or reasonable suspicion to justify detaining defendant for a further search. (*People v. Stewart* (1993), 242 Ill. App. 3d 599, 610 N.E.2d 197.) Trooper Tracy's explanations as to why they detained defendant after the field test were mere hunches and suspicions. Citizens should not be handcuffed and detained in police cars after the police have effectuated the purpose of the "investigatory stop," unless there is probable cause or a reasonable suspicion to believe that the citizen has committed a crime. The trial court's determinations that defendant was illegally detained and that the search of his car was illegal and the court's order granting defendant's motion to suppress evidence were not manifestly erroneous.

For the foregoing reasons, the judgment of the circuit court of St. Clair County is affirmed.

Affirmed.

GOLDENHERSH, J., concurs.

JUSTICE WELCH, dissenting:

I do not agree with the majority's conclusion that, after the white powder field tested negative for cocaine, Trooper Tracy no longer had probable cause to believe that defendant's vehicle contained contraband. To the contrary, I believe that, given the totality of the circumstances, Trooper Tracy did have probable cause to believe that defendant's vehicle contained contraband even after the negative field test, and that further detention of defendant and the canine search were therefore valid.

A warrantless search of a vehicle is permissible if an officer has probable cause to believe there is contraband in the car. (*People v. Kolody* (1990), 200 Ill. App. 3d 130, 134, 558 N.E.2d 589, 593.) Probable cause exists when, considering the totality of the circumstances known to the police officer at the time of the search, a reasonable person would believe that contraband was present in the vehicle. (*Kolody*, 200 Ill. App. 3d at 134-35, 558 N.E.2d at 593.) In the instant case, the totality of the circumstances known to the officers at the time of the search of the car would justify a reasonable person in believing that contraband was present in the car.

Just before Trooper Tracy conducted the pat-down search of Mr. Bryant, he noticed the prescription bottle on the front passenger seat. He picked it up and saw that it contained a white powder and was labelled "gold tooth polish." The trooper asked the defendant what it was, and the defendant stated that it was gold tooth soap. The trooper then asked the defendant and Mr. Bryant for their identification. Neither had driver's licenses with them so the officer used their names to check their records. The defendant's record came back clear and showed that he had a valid driver's license. Although Mr. Bryant's record was clear, it did not list a driver's license, which indicated to the trooper that Mr. Bryant was lying. After Mr. Bryant revealed his true identity, the trooper found out that he was wanted in Sangamon County for criminal sexual assault. Trooper Tracy placed Mr. Bryant under arrest based on the outstanding warrant and conducted a more thorough search of him. During this search, the trooper found two rock-like substances

wrapped in plastic in Mr. Bryant's front pocket. The trooper again was told that the substance was gold tooth polish.

At this point, Trooper Tracy had two different substances which the defendant and Mr. Bryant claimed to be gold tooth polish, one a white powder and the other a rock-like substance. The claim that both of these substances were gold tooth powder led Trooper Tracy to reasonably believe that the white powder in the prescription bottle was cocaine, so he called for a field testing kit and the canine unit. When Master Sergeant Bramlett arrived with Sergeant Runyon, Sergeant Runyon field tested the white powder and the rock-like substances. Both the powder and the rock-like substances tested negative for cocaine.

The defendant below argued, and the trial court agreed, that at this point, when the substances tested negative for cocaine, the search should have ended and the further detention and search of the defendant and his car were unreasonable. Although there is no talismanic time beyond which any investigatory stop becomes an unreasonable seizure, the brevity of the stop is an important factor in determining whether the stop is unreasonable. However, a reviewing court must also consider whether the police acted diligently in pursuing their investigation. (*People v. Smith* (1991), 208 Ill. App. 3d 44, 50, 566 N.E.2d 939, 943; *United States v. Place* (1983), 462 U.S. 696, 709, 77 L. Ed. 2d 110, 122, 103 S. Ct. 2637, 2645-46.) Furthermore, if answers to initial inquiries during an investigatory stop dispel questions in an officer's mind, the stop may go no further and the individual may no longer be detained. However, if the inquiries arouse further suspicion, the stop may be prolonged and the scope expanded. (*People v. Smith* (1991), 208 Ill. App. 3d 44, 50, 566 N.E.2d 939, 943.) Finally, if an officer's suspicions are not allayed within a reasonable time, he must either make an arrest or allow the individual to leave. *Smith*, 208 Ill. App. 3d at 50, 566 N.E.2d at 943.

In the case at bar, the negative field test results did not dispel the officers' suspicions, especially in light of the defendant's and Mr. Bryant's story that both substances were gold tooth powder, and the rock-like substances were packaged in the same manner as crack cocaine is packaged and sold. The officers reasonably believed that the powder might be a cutting substance and the rock-like substances might be passed off as crack cocaine. (See Ill. Rev. Stat. 1991, ch. 56½, par. 1404.) Therefore, Master Sergeant Bramlett ordered everyone to wait for the canine unit. Furthermore, Sergeant Runyon stated that the powder could have been some other con-

trolled substance and that it is possible for the test kit to give a false negative. Because the field test did not dispel the officers' suspicions, it was proper for them to continue the search of the car. Further, the officers acted diligently in pursuing their investigation despite the fact that the detention lasted nearly an hour and a half. The length of the detention was due in large part to the amount of time it took the officers to arrive at the scene. With the exception of the canine unit, it took all the officers 15 to 20 minutes to arrive at the scene. It took the canine unit 30 to 35 minutes to arrive. Each officer responded immediately to the call for assistance. The record reveals no improper delaying tactics or lack of diligence to get to the scene on the part of the officers.

In the present case, the officers did have probable cause to continue the investigation despite the fact that the substance tested negative for cocaine. As stated earlier, probable cause to search an automobile exists when the totality of the circumstances known to the officers at the time of the search would justify a reasonable person in believing that contraband was present in the automobile. (*People v. Kolody* (1990), 200 Ill. App. 3d 130, 134-35, 558 N.E.2d 589, 593.) Even though the substances tested negative for cocaine, a reasonable person would believe that contraband was present in the automobile. The officers were confronted with two different substances, both of which were purported to be gold tooth cleaner. One substance was a white powder in a medicine vial, and the other was rock-like and wrapped in plastic. Trooper Tracy testified that the rock-like substance was packaged in the manner that crack cocaine is sold and that Master Sergeant Bramlett told him that the powder could have been a cutting substance and that the rock-like substance could have been passed off as crack cocaine. Further, Sergeant Runyon stated that the powder could have been some other controlled substance as the test kit only tested for cocaine. In addition, the field test kit was not as accurate as a lab test, and the kit could have given a false negative. Faced with these circumstances, a reasonable person would be justified in believing that contraband was present in the car and, therefore, probable cause existed for the further search of the defendant's car. I believe the court below erred in granting the defendant's motion to suppress.

Accordingly, I would have reversed the order of the circuit court suppressing the weapon as manifestly erroneous. I therefore respectfully dissent.